USA v. Kahn

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2020

(Argued: December 17, 2020      Decided: July 13, 2021)

Docket No. 19-3920

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

- v. -

JEFFREY KAHN, as co-executor of the estate of HAROLD KAHN,
and JOEL KAHN, as co-executor of the estate of HAROLD KAHN,

*Defendants-Appellants.*
_____

Before:  KEARSE, BIANCO, and MENASHI, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the
Eastern District of New York, Kiyo A. Matsumoto, *Judge,* in favor of the government

against defendants as co-executors of the estate of Harold Kahn ("Kahn"), in the principal penalty amount of $4,264,728, plus statutory additions and interest, for Kahn's undisputedly willful failure, in violation of 31 U.S.C. § 5314, to file in 2009 a Report of Foreign Bank and Financial Accounts ("FBAR") for his two foreign bank accounts whose balances, at the time of his failure to file, totaled $8,529,456. The district court granted the government's motion for summary judgment on the ground that, under 31 U.S.C. § 5321 as amended in 2004, the maximum penalty for Kahn's failure to file an FBAR is 50 percent of the aggregate balance in the accounts at the time of that failure; the court rejected defendants' contention that a 1987 Treasury Department regulation, 31 C.F.R. § 1010.820(g)(2), limits the government's authority to impose penalties for willful FBAR violations to $100,000 per account. *See United States v. Kahn*, 17-cv-7258, 2019 WL 8587295 (E.D.N.Y. Sept. 23, 2019). On appeal, defendants pursue their contention that the regulation trumps the later-amended statute. We conclude that the district court correctly ruled that the penalty limitation provided in the 1987 regulation, which had tracked the penalty provision enacted in a prior version of the statute, was superseded by the 2004 statutory amendment increasing the penalty maximum.

Affirmed.

Judge Menashi dissents in a separate opinion.

JULIE CIAMPORCERO AVETTA, Tax Division, Department of Justice, Washington, D.C. (Richard E. Zuckerman, Principal Deputy Assistant Attorney General, Joshua Wu, Deputy Assistant Attorney General, Francesa Ugolini, Geoffrey J. Klimas, Attorneys, Tax Division, Department of Justice, Washington, D.C.; Seth D. DuCharme, Acting United States Attorney for the Eastern District of New York, New York, New York, on the brief), *for Plaintiff-Appellee*.

JAMES N. MASTRACCHIO, Washington, D.C. (Daniel G. Strickland, Eversheds Sutherland (US), Washington, D.C., on the brief), *for Defendants-Appellants*.

KEARSE, *Circuit Judge*:

Defendants Jeffrey and Joel Kahn, as co-executors of the estate of Harold Kahn ("Kahn"), appeal from a judgment of the United States District Court for the Eastern District of New York, Kiyo A. Matsumoto, *Judge*, in favor of the United States against defendants as co-executors of the Kahn estate (the "Estate") in the principal penalty amount of $4,264,728, plus statutory additions and interest, for Kahn's undisputedly willful failure, in violation of 31 U.S.C. § 5314, to file in 2009 a Report of Foreign Bank and Financial Accounts ("FBAR") for his two foreign bank accounts whose balances, at the time of the failure to file, totaled $8,529,456. The district court

- 3 -

granted the government's motion for summary judgment on the ground that, under 31 U.S.C. § 5321 as amended in 2004 (the "2004 Statute"), the maximum permissible penalty for Kahn's failure to file an FBAR is 50 percent of the aggregate balance in the accounts at the time of the failure to file; the court rejected the Estate's contention that the government's authority to impose penalties for willful FBAR violations is limited by a 1987 Treasury Department (or "Treasury") regulation, 31 C.F.R. § 1010.820(g)(2), to $100,000 per account (the "1987 Regulation").  On appeal, the Estate pursues its contention that the 1987 Regulation trumps the later-amended statute.  We conclude that the district court correctly ruled that the penalty limitation provided in the 1987 Regulation--which reflected the penalty provision in the 1986 version of the statute-- was superseded by the 2004 amendment to the statute increasing the penalty maximum; and we affirm the judgment.

## I.  BACKGROUND

As discussed in greater detail in Part II below, a United States person with an interest in foreign financial accounts having an aggregate value of more than

$10,000 is required each year to file an FBAR. *See* 31 U.S.C. § 5314; 31 C.F.R. § 1010.350(a); 31 C.F.R. § 1010.306(c).

A. *The Facts*

The facts of this case are not in dispute, as the parties have stipulated as follows:

1. Harold Kahn . . . willfully failed to file Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts ("FBAR") for the 2008 year as required by 31 U.S.C. § 5314 and implementing regulations.

2. The filing due date for the 2008 FBAR was June 30, 2009.

3. The 2008 FBAR should have reported two bank accounts held by Mr. Kahn at Credit Suisse, Switzerland.

4. Each account held over $100,000 and the aggregate value in the two Credit Suisse accounts was $8,529,456, as of June 30, 2009.

5. The Internal Revenue Service assessed a willful penalty for the failure to file the 2008 FBAR in the amount of $4,264,728, which represents 50% of the aggregate account balance as of June 30, 2009, pursuant to 31 U.S.C. § 5321(a)(5).

(Stipulation of Fact dated September 14, 2018.)

It was also undisputed that after the Internal Revenue Service ("IRS") assessed the penalty, Kahn passed away without making payment and that the assessment has not been paid by the Estate. (*See*, *e.g.*, Complaint ¶ 36; Answer ¶ 36.) The government commenced the present action seeking judgment against the Estate in the amount of the assessment, plus additional statutory penalties and interest.

Given the above stipulated facts, the dispute centered on the maximum amount the IRS was allowed to assess as a penalty. The government contended that the 2004 Statute, 31 U.S.C. § 5321(a)(5)(C), which provided that the maximum assessable penalty was the greater of $100,000 or 50 percent of the aggregate account balance at the time of the violation--in this case $4,264,728--is to be applied. The Estate contended that the permissible penalty was limited to $100,000 per account--or a total of $200,000--under 31 C.F.R. § 1010.820(g)(2), the 1987 Regulation. Each side moved for summary judgment.

B. *The District Court's Decision*

In a well-reasoned opinion, the district court granted the government's motion and denied that of the Estate. *See United States v. Kahn*, 17-cv-7258, 2019 WL 8587295 (E.D.N.Y. Sept. 23, 2019) ("D.Ct. Op."). The court noted that the Bank Secrecy

Act ("BSA"), as enacted in 1970, required United States persons to report their relationships with foreign financial institutions. *See id*. at *4. Congress authorized the Secretary of the Treasury (the "Secretary") to promulgate regulations for implementation and enforcement of the reporting requirement; and the Secretary adopted the FBAR form. *See id*.

In 1986, focusing on money-laundering-related violations of the BSA, Congress added a civil money penalty that could be levied against private individuals for their willful failures to file FBARs. The maximum penalty was set at "the greater of" $25,000 or "an amount (not to exceed $100,000) equal to the balance in the account at the time of the violation." 31 U.S.C. § 5321(a)(5)(B)(ii)(I)-(II) (1988) (the "1986 Statute"). In 1987, the Secretary promulgated the 1987 Regulation on which the Estate relies, currently located at 31 C.F.R. § 1010.820(g), which reflected the 1986 Statute's maximum penalty provision "almost verbatim," D.Ct. Op, 2019 WL 8587295, at *5.

The 2004 Statute increased the civil penalty for willful behavior to its present level, making the maximum penalty for failure to file an FBAR the greater of $100,000 or 50 percent of the aggregate balance in the accounts at the time of the violation. *See id*. at *6; 31 U.S.C. § 5321(a)(5)(C)(i). The district court noted that despite that 2004 statutory change, the Secretary did not amend the 1987 Regulation's

- 7 -

now-inconsistent FBAR penalty provision. The IRS, which enforced the penalty provision, took the position that revisions were not necessary as the statute was "self-executing." *Internal Revenue Manual, 4.26.16.4.5.1--FBAR Willfulness Penalty* (July 1, 2008). The IRS thus began to impose penalties in excess of the regulatory cap, which it considered to be superseded. *See id*. And as of June 30, 2009, the FBAR penalty regulation, despite its apparent obsolescence, remained codified in the Code of Federal Regulations.

D.Ct. Op, 2019 WL 8587295, at *7.

Although the Estate argued that the regulation stating that the Secretary "*may* assess . . . a civil penalty" on any person who willfully violates the FBAR requirement, 31 C.F.R. § 1010.820(g) (emphasis added), is not inconsistent with the 2004 statutory language, the district court rejected that contention. The court noted that while the regulation states that the Secretary may impose such a penalty only up to a maximum of $25,000, the statute provides that the maximum "'*shall be increased* to the greater of (I) $100,000, or (II) 50 percent'" of the unreported aggregate balance. D.Ct. Op, 2019 WL 8587295, at *8 (quoting 31 U.S.C. § 5321(a)(5)(C)(i) (emphasis in D.Ct. Op)). The court reasoned that the use of the mandatory "shall be" phrase "shows that Congress did not intend to delegate the determination of the maximum penalty to the Secretary." D.Ct. Op, 2019 WL 8587295, at *9 (internal quotation marks omitted). The court stated that

> [t]he Secretary may, on a case-by-case basis, impose penalties below the statutory maximum. But he *cannot effectively abrogate the statute and the maximum penalty specifically set by Congress by promulgating (or failing to repeal) a regulation providing a different penalty ceiling*.

*Id*. (emphasis added).

Concluding that the regulation is inconsistent with the plain language of the amended statute, the court granted summary judgment in favor of the government on the ground that the 1987 Regulation is no longer valid, and that the assessment against the Estate of $4,264,728, *i.e.*, 50 percent of the aggregate balance in Kahn's two foreign accounts at the time of his willful violation--the statutory maximum--was therefore permissible.

## II. DISCUSSION

On appeal, the Estate contends that the district court erred in refusing to limit the per-willful-violation maximum penalty for failure to file an FBAR to the $100,000-per-account maximum set by the 1987 Regulation, arguing principally that the regulation is not inconsistent with the 2004 Statute, that the court misinterpreted the statute's use of the word "shall," and that in any event, the rule of lenity requires

that any ambiguity be resolved in the Estate's favor. Because the parties have stipulated to the facts, the "only inquiry is which party is entitled to judgment as a matter of law." *Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765, 771 (2d Cir. 1999). Reviewing that question *de novo*, we conclude that, in granting summary judgment to the government, the district court made no error.

A. *The Statutory Provisions and the 1987 Regulation*

The BSA, as enacted by Congress in 1970, introduced a requirement that United States persons report their relationships with foreign financial institutions. *See* 31 U.S.C. § 1121(a) (1970). The BSA authorized the Secretary to promulgate regulations for the implementation and enforcement of that reporting requirement. *See* 31 U.S.C. § 1053-54 (1970). But with respect to willful failures to comply, Congress authorized imposition of civil monetary penalties only on "domestic financial institutions" and their agents--not on individuals; and it gave the Secretary discretion to determine, on a case-by-case basis, whether to impose such a penalty, but only up to $1,000. 31 U.S.C. § 1056(a) (1970). In 1972, the Secretary issued a regulation--tracking the 1970 statutory language nearly verbatim--permitting the Secretary to assess a civil penalty of up to $1,000 on domestic financial institutions

and their agents that willfully violated BSA-related regulations. *See* 31 C.F.R. § 103.47 (1972); 37 Fed. Reg. 6912, 6915 (April 5, 1972).

In the 1986 Statute, for willful failures to file an FBAR, Congress added authorization for the Secretary to impose a civil monetary penalty on individuals. The 1986 Statute provided that "[t]he amount" of a "civil money penalty" for "a failure to report" a foreign account "shall not exceed"

> *the greater of--*
>
> > (I) an amount (*not to exceed $100,000*) equal to *the balance in the account* at the time of the violation; *or*
>
> > (II) *$25,000*.

31 U.S.C. § 5321(a)(5)(B)(ii) (1988) (emphases added). In 1987, the Secretary issued the 1987 Regulation stating that, "after October 27, 1986"--the effective date of the 1986 Statute--"[f]or any willful" "failure to report" a foreign account, "the Secretary may assess"

> a civil penalty not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000.

31 C.F.R. § 1010.820(g)(2). Thus, the 1987 Regulation tracked the civil penalty provision introduced by the 1986 Statute.

In 1990, the Secretary established, within the Treasury Department, the Financial Crimes Enforcement Network ("FinCEN"), whose mission includes collecting and maintaining information filed under the BSA. In 2002, the Secretary granted the Director of FinCEN the authority to "implement and administer the [BSA] . . . including, but not limited to, the promulgation and amendment of regulations and the assessment of penalties," with the proviso that all regulations "in effect or in use on the date of enactment of the USA Patriot Act of 2001, shall continue in effect . . . *until superseded* or revised." Treasury Order 180-01; Financial Crimes Enforcement Network, 67 Fed. Reg. 64697 (Oct. 21, 2002) ("Treasury Order 180-01") (emphasis added). A year later, FinCEN delegated its authority for the enforcement of the FBAR requirements--including the authority to assess and collect civil penalties under 31 U.S.C. § 5321 and 31 C.F.R. § 1010.820--to the IRS; but FinCEN did not delegate authority to promulgate or amend FBAR regulations.

In 2002, the Secretary reported to Congress that "the IRS estimate[d] that there may be as many as 1 million U.S. taxpayers who have signature authority or control over a foreign bank account and may be required to file FBARs," and that the rate of compliance with that requirement may be "less than 20 percent." Secretary of the Treasury, *A Report to Congress in Accordance with § 361(b) of the USA PATRIOT Act*

- 12 -

(April 26, 2002), at 6 ("Secretary's 2002 Report to Congress"). Congress then considered amending the FBAR failure-to-file penalty provisions. Both the House of Representatives and the Senate proposed to add a civil penalty for non-willful failures to file; for those failures the House proposed a maximum penalty of $5,000, and the Senate proposed a maximum of $10,000. As to willful failures, the House proposed to retain the existing penalty provision, whereas the Senate proposed raising the maximum penalty to levels that could substantially exceed the existing $100,000 maximum, pegged to the balances in the unreported accounts. *See* H.R. Conf. Rep. 108-775 at 615 (Oct. 7, 2004), *reprinted in* 2004 U.S.C.C.A.N. 1341, 1647. The Senate proposal was adopted, *see id*., and in the 2004 Statute Congress amended the penalty provisions to read--as of the date of enactment, and as they do today--as follows:

(A) Penalty authorized.--The Secretary of the Treasury may impose a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314.

(B) Amount of penalty.--

(i) In general.--*Except as provided in subparagraph (C)*, the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000.

. . . .

(C) *Willful* violations.--In the case of any person *willfully* violating, or *willfully* causing any violation of, any provision of section 5314--

(i) *the maximum penalty* under subparagraph (B)(i) *shall be increased to the greater of*--

(I) *$100,000, or*

(II) *50 percent of the amount determined under subparagraph (D)* . . .

. . . .

(D) Amount.--The amount determined under this subparagraph is--

. . . .

(ii) *in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, the balance in the account at the time of the violation.*

31 U.S.C. § 5321(a)(5) (emphases added).

B. *Estate Contentions*

The Estate insists that the 1987 Regulation's penalty maximum, set lower than the maximum provided by the 2004 Statute, presents no inconsistency with the 2004 Statute. In support, the Estate asserts that the Secretary has broad rulemaking authority, citing a series of BSA provisions (as currently codified) that say the Secretary "*may* . . . exempt" "a reasonable classification of persons . . . from" the FBAR requirement, "*may* . . . decide[ to] apply[]" the regulation to accounts in fewer than all foreign countries, "*may* prescribe . . . the magnitude of transactions" to be regulated, "*may* . . . exempt" a "kind of transaction[] . . . from . . . reg[u]lation," and "*may* prescribe . . . other matters the Secretary considers necessary" (Estate brief on appeal at 10 (internal quotation marks omitted) (emphases in brief)); and it quotes the 2004 Statute provision at 31 U.S.C. § 5321(a)(5)(A), which states that the Secretary "'*may* impose a civil money penalty on any person who violates, or causes any violation of, any provision of'" the FBAR requirement (Estate brief on appeal at 11 (emphasis in brief)).

Conspicuously absent from this litany, however, is any statutory provision saying that the Secretary may set a maximum penalty level for failure to file an FBAR. Instead, in every version of § 5321 that has authorized the imposition of a civil penalty for failure to file required financial reports, Congress itself has specified

the maximum penalty that the Secretary was authorized to impose--whether on an enterprise or an individual, and whether non-willful or willful. And a statute's general provision that an administrator may issue such other regulations as he "considers necessary" does not constitute authorization to issue a regulation that contradicts an express provision of the statute. *See, e.g., Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86-88 (2002) (invalidating a regulation promulgated pursuant to the Secretary of Labor's authority to issue "regulations necessary to carry out" the Family and Medical Leave Act where that regulation was "contrary to the Act's remedial design" (internal quotation marks omitted)).

The meaning of the phrase "*may* impose a civil penalty" in the 2004 Statute, 31 U.S.C. § 5321(a)(5)(A), must be read in light of the provisions that follow, as we "'give effect, if possible, to every clause and word of a statute,'" *Panjiva, Inc. v. United States Customs & Border Protection*, 975 F.3d 171, 178 (2d Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)), avoiding interpretations that would render one or more of the statute's provisions superfluous. The word "shall," in a statute, indicates a command; what follows the word "shall" is "mandatory, not precatory." *Mach Mining, LLC v. Equal Employment Opportunity Commission*, 575 U.S. 480, 486 (2015).

Here, instead of permitting the Secretary to establish the maximum permissible penalty for failures to file FBARs, the 2004 Statute provided that the "maximum" penalty for a willful failure "shall be increased" to the greater of $100,000 or 50 percent of the total relevant account balances, 31 U.S.C. § 5321(a)(5)(C)(i). The Estate contends that the district court erred in viewing "shall be increased" as a reference to the maximum penalty set in the 1986 Statute, rather than as a comparison to the maximum set for non-willful failures; and indeed, subparagraph (C)(i) states that the maximum penalty "under subparagraph (B)(i)"--the subparagraph capping the penalty at $10,000 for non-willful failures--"shall be increased." But regardless of the starting point for the increase, the maximum penalty was in fact increased, and there is no ambiguity whatever as to the level to which it was increased. The 2004 Statute's "shall be increased" provision made it mandatory that a person who willfully fails to file an FBAR be exposed to the possibility of a penalty that was increased to $100,000 or 50 percent of the aggregate balance in the unreported accounts, whichever is "greater."

Plainly the Secretary has discretion in a given case to impose a penalty that is below the ceiling provided by the statute: such flexibility is reflected in the very essence of a level denominated a "maximum." Indeed, the Estate acknowledges

that the "shall" in the 2004 Statute "did *not* dictate a requirement to *impose* the maximum penalty in all cases," and that "Congress . . . did *not* make the maximum penalty *mandatory*--it left to the Secretary *discretion* as to how much penalty could be imposed under the permissible *statutory* maximum." (Estate brief on appeal at 24, 23 (emphases added).) But for the 1987 Regulation to forbid--as the Estate contends--any assessment of a penalty as high as the ceiling set by the 2004 Statute is simply inconsistent with that statute. Adherence to the 1987 Regulation would shrink the discretion that was conferred on the Secretary by the 2004 Statute--providing less discretion than Congress believed was needed in order to deter willful disregard of FBAR requirements.

Accordingly, contrary to the Estate's contention, we conclude that the 1987 Regulation and the 2004 Statute are not "harmonious" (Estate brief on appeal at 25). *Accord Norman v. United States*, 942 F.3d 1111, 1117-18 (Fed. Cir. 2019) ("*Norman*"); *United States v. Horowitz*, 978 F.3d 80, 90-91 (4th Cir. 2020) ("*Horowitz*"); *United States v. Rum*, 995 F.3d 882, 892 (11th Cir. 2021) ("*Rum*").

Of course, the 1987 Regulation--when it was adopted--was not inconsistent with the maximum penalty that Congress had then set; the 1987 Regulation tracked the precise levels set out in the 1986 Statute. But the 1986 Statute's

penalty provisions were plainly amended by the 2004 Statute, and a regulation that "contravenes the plain language of the statute" is invalid, *Lawrence + Memorial Hospital v. Burwell*, 812 F.3d 257, 259 (2d Cir. 2016). Even a regulation that is not "technically inconsistent with the statutory language" is invalid "when that regulation is fundamentally at odds with the manifest congressional design." *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26 (1982) (internal quotation marks omitted). Thus, when Congress enacted the 2004 Statute stating that the maximum penalty "shall be increased," any continued adherence to the 1987 Regulation contravened both the plain language of the statute and the "manifest congressional design," *id.*, embodied in the 2004 Statute. As the Court of Appeals for the Federal Circuit in *Norman* stated in rejecting an attempt to have the 1987 Regulation's penalty limitation applied instead of the maximum provided by the 2004 Statute,

> *[i]t is well-settled that subsequently enacted or amended statutes supersede prior inconsistent regulations.* . . . A regulation that contravenes a statute is invalid. . . . A regulation cannot override a clearly stated statutory requirement. . . . *It is well-settled that when a regulation conflicts with a subsequently enacted statute, the statute controls and voids that regulation.* . . . Ms. Norman's position to the contrary would inappropriately prevent all newly created or amended statutes from taking effect until all inconsistent regulations are amended or repealed.

*Norman*, 942 F.3d at 1118 (internal quotation marks omitted (emphases ours)); *see, e.g.,* *Rum*, 995 F.3d at 892 ("The plain text of § 5321(a)(5)(C) makes it clear that a willful penalty may exceed $100,000 because it states that the maximum penalty 'shall be . . . the greater of (I) $100,000, or (II) 50 percent of' . . . the balance of the account. The regulation was promulgated in 1987 and mirrored the language of the statute *at that time* but was never updated. '*[T]he statute's language is hardly consistent with an intent by Congress to allow the Secretary to impose a lower maximum penalty by regulation*; rather, Congress itself set a specific maximum penalty for a willful violation.'" (quoting *Horowitz*, 978 F.3d at 91 (emphases ours)); *Horowitz*, 978 F.3d at 91 ("[T]he 1987 regulation on which the Horowitzes rely was abrogated by Congress's 2004 amendment to the statute and therefore is no longer valid.").

Like our Sister Circuits, we decline to read the maximum penalty provision in the 2004 Statute as having been rendered superfluous *ab initio* by the Secretary's purported preexisting discretion to set a penalty maximum. Given the 2002 report of the Secretary himself to Congress as to the meager level of compliance with the FBAR requirement--*i.e.*, estimating that four of every five taxpayers who were required to file FBARs, perhaps totaling as many as 800,000, were failing to do so (*see* Secretary's 2002 Report to Congress at 6)--it seems surprising that the Secretary

would insist on maintaining the modest maximum penalty level provided in the superseded 1986 Statute and the 1987 Regulation, rather than the potentially much higher penalties enacted in the 2004 Statute. Or perhaps it should not be surprising, given that 20 years ago, the Supreme Court observed that "[t]he Treasury's relaxed approach to amending its regulations to track Code changes [wa]s well documented." *United Dominion Industries, Inc. v. United States*, 532 U.S. 822, 836 (2001). We note that the Secretary's 2002 delegation to FinCEN of BSA enforcement responsibility expressly (a) instructed that FinCEN was to "implement and administer the provisions of . . . the [BSA], . . . codified at," *inter alia*, "*31 U.S.C. 5311 et seq.*," and (b) stated that "regulations . . . in effect or in use on the date of enactment of the USA Patriot Act of 2001, shall continue in effect . . . *until superseded* or revised." Treasury Order 180-01, 67 Fed. Reg. 64697 (emphases added). In any event, regardless of Treasury's failure to have the 1987 Regulation deleted from the post-2004 Code of Federal Regulations, "[a] regulation which does not" implement "the will of Congress as expressed by the statute" and instead "operates to create a rule out of harmony with the statute, is a mere nullity." *Iglesias v. United States*, 848 F.2d 362, 366-67 (2d Cir. 1988) (internal quotation marks omitted).

Our dissenting colleague argues that Treasury has "the obligation to follow its own regulations," dissenting opinion *post* at 2. In our view, this argument rests on two erroneous assumptions: first, that because the Secretary has discretion to elect whether, and to what extent below the statutory maximum, to impose a penalty for failure to file an FBAR, the Secretary also has the authority to issue a regulation setting the maximum penalty below the statutory maximum; and second, that the 1987 Regulation is a product of that discretion. Neither assumption is valid.

First, in relying on 31 U.S.C. § 5314(b)(5), which states that the Secretary "may prescribe . . . other matters the Secretary considers necessary to carry out this section," the dissent perceives a freestanding grant of authority to set a maximum penalty that differs from that expressly set by the statute. *See* dissenting opinion *post* at 5 & n.5. Nothing in such language authorizes the Secretary to promulgate a rule that would nullify a statutory provision that was deemed necessary by Congress, *see generally Ragsdale*, 535 U.S. at 86-88; generally, such a countermand could not be thought to "carry out" the section. And here, "this section"--31 U.S.C. § 5314-- emphasizes the need to have United States persons keep records and "file reports" as to their foreign financial transactions, *id*. § 5314(a). Given that, as discussed above, Congress in 2004 raised the maximum penalty for such violations after being

informed by the Secretary that perhaps as many as 800,000 persons required to file FBARs were noncompliant, a regulation purporting to nullify the statutory increase plainly does not "carry out" Congress's goal of encouraging compliance with the FBAR requirement. For those persons who deem it worth an expense capped at $100,000 per account to achieve their concealment and/or tax-avoidance goals, the regulation instead encourages them to flout the FBAR requirement.

Second, even assuming *arguendo* that the Secretary had been given authority to set a maximum penalty lower than the level specified in the statute, there is no basis for inferring that the 1987 Regulation was the product of either a desire to promulgate a regulation that would have the force of law independently of the BSA or a desire to reduce the Secretary's own discretion. Although Treasury engaged in proposed rulemaking in August 1986, that notice-and-comment process involved a rule designed to "correct[] a technical error in the [1985] regulations that implemented [an] increase in [the] civil penalty amount made by" an amendment to the statute in 1984. Amendments to Implementing Regulations; the Bank Secrecy Act, 51 Fed. Reg. 30233, 30236 (Aug. 25, 1986). The provision that became the 1987 Regulation--which parrots the 1986 Statute--was not part of the proposed rulemaking, because the 1986 Statute had not yet been enacted. Thereafter, the 1987 Regulation simply included the

penalty maximum provision enacted by the 1986 Statute, "to keep the regulations as current as possible." Amendments to Implementing Regulations Under the Bank Secrecy Act, 52 Fed. Reg. 11436, 11440 (April 8, 1987). And in stating a maximum penalty that parroted the 1986 Statute, the 1987 Regulation did not reduce the discretion accorded to the Secretary.

"[T]he existence of a parroting regulation," *i.e.*, one that "merely . . . paraphrase[s] the statutory language" rather than introducing a provision formulated in reliance on agency "expertise and experience," "does not change the fact that the question here is not the meaning of the regulation but the *meaning of the statute*." *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) (emphasis added). The dissent, in seeking to elevate the status of the 1987 Regulation, relies only on cases involving regulations promulgated pursuant to a general grant of authority in a statutory scheme that required agency interpretation; it cites no cases involving a regulation that either tracked the statutory text or conflicted with the statutory text.

Finally, we note the Estate's argument that the penalty for Kahn's willful failure to file an FBAR should be limited to a total of $200,000 under "'the rule of lenity,'" which "'applies if, after considering text, structure, history, and purpose, there remains a grievous *ambiguity or uncertainty in the statute*, such that the Court must

simply guess as to what Congress intended.'" (Estate brief on appeal at 42 (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (emphasis ours).)  Assuming that the rule of lenity is applicable to a civil rather than a criminal statute, we see no basis for its invocation here.  There is no ambiguity or uncertainty as to what Congress intended in the 2004 Statute when it provided that the penalty for a willful failure to file an FBAR would be "the greater of" $100,000, or 50 percent of the aggregate balance of the accounts.

In sum, we conclude that the district court correctly ruled that when the 2004 Statute raised the maximum penalty that had been set in the 1986 Statute, the 2004 Statute superseded the 1987 Regulation's provision that had tracked the 1986 Statute.

CONCLUSION

We have considered all of the Estate's arguments on this appeal and have found them to be without merit.  The judgment of the district court is affirmed.

19-3920
*United States v. Kahn*

MENASHI, *Circuit Judge*, dissenting:

"It is a familiar rule of administrative law that an agency must abide by its own regulations." *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990).[1] We call this rule "the *Accardi* principle" after the case most associated with it, *United States ex rel. Accardi v. Shaughnessy* 347 U.S. 260 (1954).[2] In this case, the *Accardi* principle requires that we reverse the judgment of the district court.

The Treasury Department's current regulations provide that the penalty for Harold Kahn's willful failure to file a Report of Foreign Bank and Financial Accounts ("FBAR") may not exceed $100,000. *See* 31 C.F.R. § 1010.820(g)(2). This penalty falls within the statutorily authorized range. *See* 31 U.S.C. § 5321(a)(5). While the governing statute also authorizes penalties greater than $100,000, it nowhere mandates that the Secretary impose a higher fine. *See id.* In fact, the statute gives the Secretary discretion to impose no fine at all. *See id.* § 5321(a)(5)(A). The current regulation therefore does not conflict with the governing statute and the Secretary must adhere to that regulation as long as it remains in effect. The court, however, excuses

---

[1] *See also Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."); *Mantena v. Johnson*, 809 F.3d 721, 729 (2d Cir. 2015) ("It is an abecedarian principle of administrative law that agencies must comply with their own regulations.") (quoting *Manguriu v. Lynch*, 794 F.3d 119, 122 (1st Cir. 2015)).

[2] *See* Thomas W. Merrill, *The Accardi Principle*, 74 Geo. Wash. L. Rev. 569, 569 (2006).

the Treasury Department from the obligation to follow its own regulations. I dissent.

**I**

The parties in this case do not question the *Accardi* principle. "[P]roperly promulgated, substantive agency regulations have the force and effect of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979) (internal quotation marks omitted); *see also Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) ("Rules issued through the notice-and-comment process are often referred to as 'legislative rules' because they have the 'force and effect of law.'"). Therefore, such a "regulation binds the government as much as the individuals subject to the regulation." *Hammond v. Lenfest*, 398 F.2d 705, 715 (2d Cir. 1968); *see also Service v. Dulles*, 354 U.S. 363, 372 (1957) ("[R]egulations validly prescribed by a government administrator are binding upon him as well as the citizen."). "[T]his principle holds even when the administrative action under review is discretionary in nature." *Service*, 354 U.S. at 372; *see also Hammond*, 398 F.2d at 715 ("[T]his is no less so because the governmental action is essentially discretionary in nature.").

Accordingly, even when a governing statute does not "obligate[]" an agency "to impose upon" itself "substantive and procedural standards," if the agency chooses to "do[] so," it may "not, so long as the [r]egulations remain[] unchanged, proceed without regard to them." *Service*, 354 U.S. at 388; *see also Vitarelli v. Seaton*, 359 U.S. 535, 540 (1959) ("[T]he Secretary ... was bound by the regulations which he himself had promulgated for dealing with such cases, even though without such regulations he could have discharged petitioner summarily.").

2

The Treasury Department has sometimes evaded standard administrative law principles when enforcing the tax laws,[3] but the Supreme Court has made clear that the *Accardi* principle applies in the tax and non-tax context alike. *See Ballard v. Comm'r*, 544 U.S. 40, 59 (2005) ("However efficient the Tax Court's current practice may be ... [t]he Tax Court, like all other decisionmaking tribunals, is obliged to follow its own Rules.") (citing *Service*, 354 U.S. at 388, and *Vitarelli*, 359 U.S. at 540); *see also Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 55 (2011) ("[W]e are not inclined to carve out an approach to administrative review good for tax law only. To the contrary, we have expressly recognized the importance of maintaining a uniform approach to judicial review of administrative action.") (internal quotation marks and alterations omitted).

## II

The current Treasury Department regulation governing penalties for willful failures to file an FBAR provides that any penalty is "not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000." 31 C.F.R. § 1010.820(g)(2). The regulation thereby limits FBAR penalties to a $100,000 maximum. The Treasury Department, however, imposed a penalty over forty-two times that maximum—$4,264,728 to be exact—for Kahn's willful failure to file an FBAR. Because this penalty is inconsistent with the governing regulation, the *Accardi* principle requires us to reject the Department's attempt to collect it.

---

[3] *See* Kristin E. Hickman, *Administering the Tax System We Have*, 63 Duke L.J. 1717, 1718 (2014) (describing "tax departures from general administrative-law norms").

Recognizing this straightforward argument, the government—and the court—insist that the relevant regulation is "invalid" because it "was superseded by the 2004 amendment to the statute" that "increase[ed] the penalty maximum" the agency may collect to above $100,000. *Ante* at 4, 19. Of course, if the 2004 amendment did in fact supersede the regulation, then the regulation would lack "the force and effect of law" and no longer bind the Treasury Department. *Perez*, 575 U.S. at 96. A statute overrides a preexisting regulation when the "regulation conflicts with [the] subsequently enacted statute." *Farrell v. United States*, 313 F.3d 1214, 1219 (9th Cir. 2002); *see also Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) ("It is a basic tenet that 'regulations, in order to be valid, must be consistent with the statute under which they are promulgated.'"); *Scofield v. Lewis*, 251 F.2d 128, 132 (5th Cir. 1958) ("A Regulation, valid when promulgated, becomes invalid upon the enactment of a statute in conflict with the Regulation."). The 2004 amendment, however, created no conflict with the governing regulation.

The amended statute provides that "[t]he Secretary of the Treasury *may* impose a civil money penalty on any person who" fails to file an FBAR. 31 U.S.C. § 5321(a)(5)(A) (emphasis added). For nonwillful violations the statute directs that "the amount of any civil penalty imposed ... shall not exceed $10,000." *Id.* § 5321(a)(5)(B)(i). For willful violations, on the other hand, the statute specifies that "the maximum penalty under subparagraph (B)(i) shall be increased to the greater of—$100,000, or 50 percent of ... the balance in the account at the time of the violation." *Id.* § 5321(a)(5)(C)-(D).

While the court is correct that the statute *allows* the Secretary to impose a penalty in excess of the $100,000 regulatory cap, it errs in interpreting the statute to *require* that the Secretary subject violators

4

to an increased penalty—or even a "potentially" increased penalty. *Ante* at 21. The statute does not require the Secretary to do *anything*. It merely states that the Secretary "may impose a civil money penalty" subject to the limitations set out in that provision. *Id.* § 5321(a)(5)(A). By the statute's own terms, the Secretary may respond to violations by imposing any penalty up to the statutory maximum or even no penalty at all.[4]

Because the statute grants the Secretary the discretion to impose any penalty ranging from zero dollars to the statutory maximum, and because Congress has also granted the Secretary rulemaking authority to guide her exercise of that discretion,[5] the Secretary may promulgate and enforce a rule setting the applicable fines at any point from zero to the statutory maximum. The *Accardi* principle rests on the premise that agencies may constrain their statutorily granted discretion through regulation.[6] In both *Accardi*

---

[4] The government agrees that the statute confers such discretion and requires no particular penalty. *See* Oral Argument Audio Recording at 11:07-20 ("The Secretary has, under the language of the amended statute, the discretion whether to impose the civil penalty and where in the range to situate it up to the statutory maximum."). The government also agrees that the Secretary would not violate the statute if, through an exercise of her discretion, she never imposed a penalty greater than $100,000 (the limit under the current regulation) in any case. *See id.* at 15:18-50.

[5] *See* 31 U.S.C. § 5314(b)(5); *see also id.* § 5318(a).

[6] The government—unlike the court, apparently, *see ante* at 22-23—recognizes that this general rule applies in the context of the FBAR penalty statute. At oral argument, the government conceded that the Secretary could promulgate a regulation identifying categories of willful FBAR violations and setting forth a schedule of fines—including regulatory maximums—that would apply to those categories. Oral Argument Audio Recording at 11:39-12:22; 13:04-27.

and *Service*, the Supreme Court acknowledged that the governing statutes granted the agency administrator far broader discretion than the agency's regulations allowed, but the Court nevertheless held the agency to regulations that limited its discretion beyond the statutory constraints.[7] In the same way, the regulation currently codified at 31 C.F.R. § 1010.820(g)(2), which limits the FBAR penalty to a maximum of $100,000, represents a due exercise of the Secretary's authority that limits her discretion beyond the statutory constraints. "[H]aving" so exercised that authority, the Secretary may "not, so long as the [r]egulations remained unchanged, proceed without regard to them," *Service* 354 U.S. at 388, "even though without such regulations [s]he could" impose a fine that exceeds $100,000, *Vitarelli*, 359 U.S. at 540.

The court responds to this argument by watering down the *Accardi* principle. While the court admits that the statute "plainly" gives "the Secretary ... discretion in a given case to impose a penalty

---

[7] "In ... *Accardi* ... regulations of the Attorney General delegated certain of his discretionary powers to the Board of Immigration Appeals and required that Board to exercise its own discretion on appeals in deportation cases. The Court held that so long as the Attorney General's regulations remained operative, he denied himself the authority to exercise the discretion delegated to the Board even though the original authority was his and he could reassert it by amending the regulations." *United States v. Nixon*, 418 U.S. 683, 695-96 (1974); *see also Accardi*, 347 U.S. at 262-63, 265-67. Similarly, in *Service*, the governing statute provided that "the Secretary of State may, in his absolute discretion, ... terminate the employment of any officer or employee of the Department of State or of the Foreign Service of the United States whenever he shall deem such termination necessary or advisable in the interests of the United States." 354 U.S. at 370. Yet the Supreme Court reversed the Secretary's decision to discharge an employee pursuant to that authority because the Secretary did not abide by applicable regulations that constrained the exercise of his discretion. *See id.* at 365-67, 385-89.

that is below the ceiling provided by the statute," *ante* at 18, the court concludes that the statute does not "permit[] the Secretary to establish [a lower] *maximum permissible penalty* for failures to file FBARs," *ante* at 17 (emphasis added). In other words—even though the statute confers on the Secretary both discretion to choose penalties within the statutory range and to promulgate binding regulations—the statute for some reason does not allow the Secretary to cabin her own discretion through those rules.[8]

The court offers two arguments to support its conclusion. Neither is persuasive. First, the court seizes on the statutory language providing that, for willful violations, "the maximum penalty ... *shall be increased* to the greater of—$100,000, or 50 percent of ... the balance in the account at the time of the violation." 31 U.S.C. § 5321(a)(5)(C)-(D) (emphasis added); *see ante* at 16-18. The court understands this language to "mandat[e] that a person who willfully fails to file an FBAR be exposed to the possibility of a penalty that was increased to $100,000 or 50 percent of the aggregate balance in the unreported accounts, whichever is 'greater.'" *Ante* at 17; *see also Norman v. United*

---

[8] The court does not describe the contours of its new limitation on an agency's authority to cabin its own discretion. Here, the agency apparently is not allowed to set a maximum penalty below the statutory maximum. Could it set maximum penalties that apply in specified circumstances, as the government believes, or is the prohibition on altering the statutory maximum absolute, as the court seems to suggest? *See supra* note 6. Could the Secretary set forth factors that the IRS must consider before imposing a penalty or—because those factors are not specified by statute—would that impermissibly restrict the "maximum permissible penalty" that applies to regulated parties? *Ante* at 17. From now on, when an agency wants to be excused from the burden of complying with or amending its regulations, it may argue that its regulations impermissibly restrict its discretion beyond the statutory maximum. The court does not set limits on this new doctrine.

7

*States*, 942 F.3d 1111, 1117 (Fed. Cir. 2019) (adopting a similar interpretation). But when read in context, the language that the maximum penalty "shall be increased" does not mandate that the Secretary take or refrain from taking any action with respect to a violator's exposure to a penalty. Before setting out the penalty applicable to willful violations, the statute, in subparagraph (B)(i), provides that the penalties for FBAR violations generally "shall not exceed $10,000." 31 U.S.C. § 5321(a)(5)(B)(i). Subparagraphs (C) and (D) in turn provide that, in cases of willful violations, "the maximum penalty *under subparagraph (B)(i)* shall be increased to the greater of— $100,000, or 50 percent of ... the balance in the account at the time of the violation." (emphasis added). The statute uses the phrase "shall be increased" to indicate that the lower statutory maximum provided "under subparagraph (B)(i)" will be modified for willful violations. That language is not directed either at the Secretary or at her exercise of the discretion the statute confers. This provision simply does not "mandat[e]" that the Secretary ensure that willful violators remain "exposed to the possibility of a penalty" of up to 50 percent of the balance in the unreported accounts. *Ante* at 17.[9]

---

[9] The court cites *Mach Mining, LLC v. EEOC* for the proposition that "the word 'shall' is 'mandatory, not 'precatory.'" *Ante* at 16-17 (quoting 575 U.S. 480, 486 (2015)). That is a non-sequitur. Nobody disputes that § 5321(a)(5)(C)-(D) raises the statutorily authorized maximum penalty from what it would have been in the absence of those subparagraphs. The current regulation does not purport to change the statutory maximum or otherwise "nullify [that] statutory provision." *Ante* at 22. The question is whether the "shall be increased" language acts as a limitation on the Secretary's exercise of her discretion under the statute. In this sense, the statute in *Mach Mining* provides a useful contrast to the FBAR penalty statute because it illustrates the kind of language Congress uses when it wants to impose a requirement on an agency. In *Mach Mining*, the Court considered a provision directing

8

Second, the court invokes the notion that "[e]ven a regulation that is not 'technically inconsistent with the statutory language' is invalid 'when that regulation is fundamentally at odds with the manifest congressional design.'" *Ante* at 19 (quoting *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26 (1982)). Yet the only applicable principle "manifest" from the "design" of the statute Congress enacted is that the Secretary has discretion to impose any penalty up to the statutory maximum. Nothing in the statute manifests a congressional purpose to suspend the regular rule that an agency may constrain its discretion through regulation.

To the extent that the court considers the legislative history it discusses to manifest a design inconsistent with the current regulation, the Supreme Court has told us that "[l]egislative history, for those who take it into account, is meant to clear up ambiguity." *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011). When "[t]he text is clear … we need not consider ... extra-textual evidence." *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 942 (2017). In fact, *Vogel* and the cases on which it relied—*Rowan Cos. v. United States*, 452 U.S. 247 (1981), and *National Muffler Dealers Ass'n v. United States* (1979), *see Vogel*, 455 U.S. at 24-26—form a body of pre-*Chevron* tax jurisprudence from which

that "the Commission shall endeavor to eliminate any ... alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b); *see Mach Mining*, 575 U.S. at 486. That language, the Court said, "imposes" a "duty" on the EEOC to "tell the employer about [a] claim" and "provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance." *Mach Mining*, 575 U.S. at 486, 488. The "shall be increased" language in the FBAR statute, by contrast, is not addressed to the Secretary but only to "the maximum penalty under subparagraph (B)(i)," 31 U.S.C. § 5321(a)(5)(C), and the court errs in reading it to impose a constraint on the Secretary.

9

the Supreme Court has since distanced itself. "Since *Rowan* and *Vogel* were decided … the administrative landscape has changed significantly," and the Court's more recent precedents "rather than *National Muffler* and *Rowan,* provide the appropriate framework for evaluating" agency action. *Mayo Found.*, 562 U.S. at 56-57. In this case, the FBAR penalty statute clearly gives the Secretary discretion to impose any penalty beneath the statutory maximum and contains no language indicating that this discretion is constrained. Under the Supreme Court's more recent precedents, therefore, we may not read a constraint into the statute and disregard the general rule that an agency may constrain its discretion through regulation. Nor may we decline to apply the *Accardi* principle by excusing the Treasury Department from following its own regulations.[10]

---

[10] The court further supports its decision to allow the Treasury Department to disregard its regulation by asserting that the regulation was not "formulated in reliance on agency 'expertise and experience.'" *Ante* at 23-24 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006)). Agency regulations, however, "have the force and effect of law." *Chrysler Corp*, 441 U.S. at 295. The notion that a regulation may be disregarded if a court determines the regulation did not sufficiently implicate the agency's expertise is extraordinary, and the court's reliance on *Gonzales v. Oregon* for that novel proposition is misplaced. That case addressed whether *Chevron* or *Auer* deference applied to an interpretive rule that "elaborat[ed]" on a regulation that did "little more than restate the terms of [a] statute." *Id.* at 255-57. The Court held that the *Auer* framework was "inapplicable" because "the existence of a parroting regulation does not change the fact that the question here is not the meaning of the regulation but the meaning of the statute." *Id.* at 256-57. The case before us does not concern whether we should defer to the Treasury Department's interpretation of a regulation or a statute. The question is whether the FBAR penalty regulation is valid. Nothing in *Gonzales v. Oregon* suggests that "parroting regulation[s]" have some lesser degree of legal force than other regulations.

To be sure, the Secretary may amend or repeal the regulation that caps the penalty below the statutory maximum. But "[s]o long as this regulation is extant it has the force of law." *Nixon*, 418 U.S. at 695. "Here, as in *Accardi*, it is theoretically possible for the [Secretary] to amend or revoke the regulation [capping the FBAR penalty at $100,000]. But [s]he has not done so. So long as this regulation remains in force the Executive Branch is bound by it." *Id.* at 696.

\* \* \*

"[I]f troubled by the consequences" produced by standard administrative law principles, the Treasury Department may "amend its regulations" if it desires a different outcome. *Mayo Found.*, 562 U.S. at 55. Yet by affirming the district court's judgment and allowing the Treasury Department to collect the $4,264,728 penalty it imposed on Harold Kahn—a penalty that exceeds the Department's stated regulatory maximum by over four-thousand percent—the court departs from basic administrative law and unjustifiably accommodates "the Treasury's relaxed approach to amending its regulations," *ante* at 21 (quoting *United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 836 (2001)). I therefore dissent.