NO. 07-07-0061-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 15, 2008

_____

TEXAS WINDSTORM INSURANCE ASSOCIATION,

Appellant

v.

RENETTA POOLE & WALTER POOLE,

Appellees

_____

FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN-06-003747; HON. STEPHEN YELENOSKY, PRESIDING

_____

*Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

The young boy looked at his grandfather and asked: "What is it?" "What do you think," came the reply. "Well . . . it has a beak . . . and, it's feet are webbed . . . it also laid eggs . . . maybe a duck . . .?" "What else do you see,?" asked the old man. "Fur and a beaver tail . . . so maybe it isn't a duck." "You're right" said the granddad, "it's a platypus." "A platypus . . . ,?" queried the boy, "what's that?" Granddad hesitated a bit, rubbed his chin, and answered: "You got me . . . ."

Dealing with our own platypus, we have been asked what is it and what can it do. Though the object of inquiry is a creature, it is not an animal created by God. Rather, it is some type of entity manufactured from the hands and minds of our Texas legislators. Having some earmarks of a governmental agency, its membership nonetheless is composed of private insurance companies. Those companies pick the officers who run the thing, but those officers must do so under the supervision of the Texas Department of Insurance. What we determine it to be helps resolve the question of whether it may initiate lawsuits to protect its interests. The trial court along with Renetta and Walter Poole say it cannot. The Texas Windstorm Insurance Association (Association) says it can. With this, we dive into the waters with our platypus, inspect its characteristics, and ultimately side with the Association.

### *Background*

In 2005, Hurricane Rita hit the Pooles' home located in Port Arthur, Texas. The Pooles had an insurance policy issued by the Association and filed a claim for roof damage. The Association paid a total of $12,472.75 to repair the damage, but that was not the last it would hear from the Pooles. Indeed, approximately eight months later, it received a letter from a public adjuster advising it that the Pooles disagreed with its assessment of their claim, and they requested that an appraisal of the property be undertaken under the policy terms. The Association believed that it was not obligated to undertake such measures and eventually filed a petition seeking declaratory relief on the matter. In response, the Pooles moved to dismiss the suit contending that the Association lacked statutory authority to sue in Texas courts to adjudicate disputes related to their insurance claims. Only they (the insureds) could do so, according to the Pooles. The trial

2

court agreed and ultimately dismissed the suit. The Association believed that the trial court erred and appealed.

### *Discussion*

The legislature created the Association as a means of providing property insurance to people living within geographic areas at risk of being hit by hurricanes. TEX. INS. CODE ANN. §2210.001 (Vernon Supp. 2007). Its membership consists of all property insurers authorized to do business in Texas. *See id.*§2210.051(a). Moreover, the members participate in the "writings, expenses, profits, and losses of the association . . . ." *Id.* §2210.052(a). Statute further permits the Association to act on behalf of its members with regard to causing the issuance of insurance to applicants, assuming reinsurance from and ceding reinsurance to members, and purchasing reinsurance on behalf of members. *Id.* §2210.053(a). And, though it has a board of directors composed of individuals selected by its membership and nominated by the "office of public insurance counsel," *id.* §2210.102, that board answers to the commissioner of insurance. *Id.* §2210.101. That commissioner is also obligated to develop a plan of operation for the entity (which plan encompasses provisions relating to the administration of the association and others deemed necessary to implement the association's purpose), *id.* §2210.152(a), while the Department of Insurance may create programs to improve the efficient operation of the Association. *Id.* §2210.053(b). And, though members of the Association may participate in the profits and losses generated by the Association, the entity's assets revert to the state upon dissolution of the entity. *Id.* §2210.056(c)

3

As for the plan of operation, it appears in the Texas Administrative Code and itemizes the powers of the board. The latter, according to §5.4001(b)(2)(L) of title 28 of the Code, is entrusted with "the management of the business and affairs of the [A]ssociation and may exercise" both specifically enumerated powers and "*all other powers incidental or appropriate*" to the management of the Association's business and affairs "subject only to the restrictions imposed by law." (Emphasis added). Included in the enumerated powers are, among other things, the authority to establish and change regulations for the management of the Association's business affairs, to purchase or acquire property, rights and privileges for the Association, to appoint and remove Association officers, representatives and legal counsel, to contract with a "servicing facility" to perform services "deem[ed] appropriate," and to "*have all other powers and to perform all other duties reasonably necessary to accomplish the purpose of the Act.*" 28 TEX. ADMIN. CODE §5.4001(b)(2)(L) (2007) (emphasis added).

Upon stepping back and contemplating the foregoing indicia, we note that the Association has attributes of a private insurance business while operating under a governmental cloak. Its membership comes from the private sector, and those members are entitled to engage in activities, via the Association, that earn them a profit. Yet, when all is said and done, the Association's assets belong to the state. So, what it truly is escapes easy categorization. Be that as it may, both the legislature and insurance commissioner nonetheless vested it with powers to sell a type of property insurance and otherwise engage in that business. More importantly, the powers vested are rather pervasive and encompass not only all those "incidental and appropriate" to the

4

management of the business but also those "reasonably necessary" to the accomplishment of the Association's purpose, that purpose being the provision of "adequate windstorm, hail, and fire insurance" to particular sectors of our state. TEX. INS. CODE ANN. §2210.001 (Vernon Supp. 2007); *see Texas Catastrophe Property Ins. Ass'n v. Council of Co-Owners of Saida II Towers Condominium Ass'n*, 706 S.W.2d 644, 645 (Tex.1986) (noting that the predecessor to the Association served the purpose of making windstorm insurance available in designated portions of Texas where the risk of hurricane was great). Furthermore, we find it difficult to picture a scenario wherein an entity authorized to acquire property, execute contracts, hire and fire personnel, collect and disburse monies, and otherwise delve into the insurance business will avoid legal entanglements necessitating resolution. While it is likely that many of those entanglements can and will be resolved without the intervention of third parties, believing that all will so be ended is, quite frankly, unrealistic and unreasonable. Indeed, finding success in the realm of business is often dependent upon the ability to petition the state's judiciary to resolve disputes that defy private disposition. Consequently, to deprive the Association of this opportunity would be tantamount to placing an obstacle before it that does not stand before like businesses, and that obstacle could only but impede its ability to fulfill the purpose or charge placed on it by the legislature.

So, in view of the realities of today's business world, it would seem that the ability to petition the state's judicial system for assistance from time to time is not only appropriate to the conduct of the Association's business but also reasonably necessary to the accomplishment of its mandated purpose. So concluding contravenes nothing expressly

5

stated in its enabling legislation; that is, the latter says nothing about the Association being barred from initiating a lawsuit. Nor do we read §2210.552(a) as implicitly prohibiting that which the statute does not prohibit explicitly, as the Pooles contend.

According to §2210.552(a), an insured "aggrieved by an act, ruling, or decision of the association relating to the payment of, the amount of, or the denial of a claim" may sue the Association or appeal the decision to the insurance commissioner and eventually to a district court. Read in context, the passage does little more than inform an insured of the avenues of redress available if it was aggrieved by an act or decision of the Association. It says nothing about the avenues available to the Association should the insured do something that aggrieves the Association, much less suggest that the Association would be restricted to simply petitioning the Texas Commissioner of Insurance. Rather, by enacting §2210.552(a), the legislature seems to be relieving an insured from first exhausting whatever administrative remedies he may have under the circumstances mentioned. Indeed, the statutory procedures give an insured the choice of either presenting the dispute to the Commissioner of Insurance, TEX. INS. CODE ANN. §§2210.551(b) & 2210.552(a)(2) (Vernon Supp. 2007), or suing in a district court. *Id.* § 2210.552(a)(1). But, it cannot do both. *Id.* §2210.552(b).

So, upon assigning the words of §2210.552(a) their plain meaning and in reading the provision in context, *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex. 1998) (requiring that a statute be so read), we cannot say that it denies the Association the ability to seek redress through the courts. This is not to say, however, that the Association is free to avoid any obligation to exhaust administrative remedies by first

6

petitioning the courts. That issue was briefed by neither party and may indeed have jurisdictional ramifications.[1] *See e.g. In re Entergy Corp.,* 142 S.W.3d 316, 321-22 (Tex. 2004) (recognizing that when administrative agencies have exclusive jurisdiction over particular matters, available administrative remedies must first be exhausted before a court may exercise its jurisdiction over the issue).

Having concluded as we do, we sustain the Association's issue, reverse the final order of the trial court dismissing the cause, and remand the proceeding for further action.


Brian Quinn
Chief Justice

---

[1] We read the Pooles' argument, both here and in the trial court, as simply involving whether the legislature generally vested the Association with power to sue in state courts. They say nothing about the exhaustion of administrative remedies. Nor did the Association. Given the potential importance of the topic, we conclude it best not to resolve it *sua sponte*.