ACCEPTED
15-24-00083-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/10/2025 10:15 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00083-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/10/2025 10:15:04 AM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals
# for the Fifteenth Judicial District

———

ASI Lloyds Insurance Company,

*Appellant,*

*v.*

Texas Windstorm Insurance Association, and The Honorable Cassie Brown, in Her Official Capacity as, Commissioner, Texas Department of Insurance,

*Appellees.*

———

On Appeal from the
126th Judicial District Court, Travis County

———

## BRIEF FOR APPELLEE CASSIE BROWN, TEXAS INSURANCE COMMISSIONER

———

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General

Cory A. Scanlon
Assistant Solicitor General
State Bar No. 24104599
Cory.Scanlon@oag.texas.gov

*Counsel for The Honorable Cassie Brown, Commissioner of Texas Department of Insurance*

# Identity of Parties and Counsel

**Appellant:**

ASI Lloyds Insurance Company

**Appellate and Trial Counsel for Appellant:**

| | |
|---|---|
| Wade C. Crosnoe | Jay A. Thompson |
| State Bar No. 00783908 | State Bar No. 19921500 |
| Thompson, Coe, Cousins & Irons, L.L.P. | Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C. |
| 2801 Via Fortuna, Suite 300 | 500 W. 5th Street, Suite 1150 |
| Austin, Texas 78746 | Austin, Texas 78701 |
| Tel.: (512) 708-8200 | Tel.: (512)480-5104 |
| wcrosnoe@thompsoncoe.com | jthompson@mwlaw.com |

**Appellees:**

Texas Windstorm Insurance Association (TWIA)

Honorable Cassie Brown, in her official capacity as Commissioner, Texas Department of Insurance

**Appellate and Trial Counsel for TWIA:**

Adrienne Barclay
State Bar No. 24065955
Michael S. Wilson
State Bar No. 21704810
Perkins Law Group, PLLC
One Far West Plaza, Suite 200
3410 Far West Blvd
Austin, TX 78731
Tel.: (512) 322-5820
abarclay@perkinslawtx.com
mwilson@perkinslawtx.com

**Appellate and Trial Counsel for Commissioner Brown:**
Ken Paxton
Brent Webster
Aaron Nielson
Grant Dorfman (currently sitting as Judge of the 11th Business Court Division)
James Lloyd
Kimberly Gdula
Cory Scanlon (lead counsel)
Ryan Kercher
Terri M. Abernathy
Rosalind Hunt
Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
cory.scanlon@oag.texas.gov

# Table of Contents

Page

Identity of Parties and Counsel ................................................................i

Index of Authorities ............................................................................iv

Record References ...........................................................................viii

Statement of the Case .......................................................................viii

Statement Regarding Oral Argument ....................................................viii

Issues Presented ...............................................................................ix

Introduction......................................................................................1

Statement of Facts ..............................................................................3

I. Funding of TWIA for Losses Exceeding Its Normal Revenue and
Premiums ...................................................................................3

    A. Insurance Code chapter 2210 and the plan of operation ......................3

    B. Adoption of Rule 5.6142.......................................................5

II. ASI's Assessments from Hurricane Harvey.............................................7

III. Procedural History .........................................................................8

    A. Agency proceedings ...........................................................8

    B. Trial court..........................................................................8

Summary of the Argument.....................................................................10

Argument.........................................................................................13

I. The Trial Court Lacks Subject-Matter Jurisdiction Over ASI's
Claim for Redundant Remedies Under the UDJA. ...............................13

II. The Rule Is Valid...........................................................................15

    A. The Commissioner has the authority to promulgate rules that
reasonably interpret or further the goals of the Insurance
Code. ...............................................................................15

    B. The Rule does not contravene any statutory language. .....................17

    C. The Rule furthers the relevant statutory objectives and does
not burden ASI beyond the Commissioner's permissible
authority. ..........................................................................24

III. No Statute Under which the Department Has the Authority to Promulgate the Rule Has Been Repealed. ...............................................27

IV. The Department's Order Should Otherwise Be Affirmed. ......................28

Prayer ......................................................................................................30

Certificate of Compliance ..........................................................................30

# Index of Authorities

Page(s)

**Cases:**

*Al Boenker Ins. Agency v. Tex. Fair Plan Ass'n*,
No. 03-01-00050-CV, 2004 WL 1686598 (Tex. App.— Austin July 29, 2004, pet. denied) (mem. op.)...................................................... 16

*Cheddar's Casual Café, Inc. v. Hegar*,
644 S.W.3d 771 (Tex. App.—Austin 2022, no pet.).............................. 18

*City of Alvin v. Pub. Util. Comm'n of Tex.*,
143 S.W.3d 872 (Tex. App.—Austin 2004, no pet.)............................. 17

*Davis v. Morath*,
624 S.W.3d 215 (Tex. 2021).................................................................29

*Engelman Irrigation Dist. v. Shields Bros., Inc.*,
514 S.W.3d 746 (Tex. 2017) ................................................................14

*Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*,
997 S.W.2d 298 (Tex. App.—Austin 1999, pet. denied) .................................. 17

*Lambright v. Tex. Parks & Wildlife Dep't*,
157 S.W.3d 499 (Tex. App.—Austin 2005, no pet.)............................. 16

*McMorries v. Tex. Med. Bd.*,
No. 03-21-00141-CV, 2023 WL 2025713 (Tex. App.—Austin Feb. 16, 2023, pet. denied) (mem. op.)................................................................18

*N. E. Indep. Sch. Dist. v. Riou*,
598 S.W.3d 243 (Tex. 2020) ................................................................ 17

*Nazari v. State*,
561 S.W.3d 495 (Tex. 2018) ................................................................14

*Norman v. United States*,
942 F.3d 1111 (Fed. Cir. 2019)............................................................24

*Patel v. Tex. Dep't of Licensing & Regul.*,
469 S.W.3d 69 (Tex. 2015)................................................................14

*Pruett v. Harris Cnty. Bail Bond Bd.*,
249 S.W.3d 447 (Tex. 2008) ...........................................................16

*Pruski v. Garcia*,
594 S.W.3d 322 (Tex. 2020)...........................................................29

*Rusk State Hosp. v. Black*,
392 S.W.3d 88 (Tex. 2012) .............................................................14

*State v. Jackson*,
376 S.W.2d 341 (Tex. 1964) ......................................................23, 24

*Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*,
616 S.W.3d 558 (Tex. 2021) ......................................................16, 27

*Tex. Dep't of Human Servs. v. Christian Care Ctrs., Inc.*,
826 S.W.2d 715 (Tex. App.—Austin 1992, writ denied) .................18

*Tex. Dep't of State Health Servs. v. Balquinta*,
429 S.W.3d 726 (Tex. App.—Austin 2014, pet. dism'd).............13, 14

*Tex. DPS v. Salazar*,
304 S.W.3d 896 (Tex. App.—Austin 2009, no pet.) .......................14

*Tex. Logos, L.P. v. TxDOT*,
241 S.W.3d 105 (Tex. App.—Austin 2007, no pet.) .......................13

*Tex. Nat. Res. Conservation Comm'n v. IT-Davy*,
74 S.W.3d 849 (Tex. 2002) .............................................................13

*Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*,
511 S.W.3d 28 (Tex. 2017) .............................................................16

*Tex. Windstorm Ins. Ass'n v. Poole*,
255 S.W.3d 775 (Tex. App.—Amarillo 2008, pet. denied) ..............15

*TGS-NOPEC Geophysical Co. v. Combs*,
340 S.W.3d 432 (Tex. 2011) ...........................................................16

*TxDOT v. Sunset Transp., Inc.*,
357 S.W.3d 691 (Tex. App.—Austin 2011, no pet.) .......................14

*United States v. Kahn*,
5 F.4th 167 (2d Cir. 2021) .........................................................23, 24

*Univ. of Tex. at Arlington v. Williams*,
459 S.W.3d 48 (Tex. 2015).......................................................16, 22

*Westcott Commc'ns., Inc. v. Strayhorn*,
104 S.W.3d 141 (Tex. App.—Austin 2003, pet. denied)............17, 22

**Statutes and Rules:**

28 Tex. Admin. Code:

§§ 5.4001 *et seq.* ..............................................................5, 6, 21

§ 5.4160(j)................................................................. 8, 24

§§ 5.4161-.4167 .................................................................5

§ 5.4161(c) ....................................................................8

§ 5.4162 ....................................................................5-6

§ 5.4162(b) ............................................................1, 6, 19

§ 5.4162(c) .....................................................................5

Tex. Civ. Prac. & Rem. Code §§ 37.003-.004 ...................................... 13

Tex. Gov't Code:

§ 2001.038 ............................................................. 13, 14, 15

§ 2001.038(a).............................................................13, 14

§ 2001.174............................................................................28

Tex. Ins. Code:

§ 36.001 ...................................................................... 17

ch 2210 ................................................. 3, 8, 24, 25, 26, 28

§ 2210.001 ..............................................................1, 3, 15-16, 24

§ 2210.003(3)....................................................................5

§ 2210.003(3-b)........................................................19, 22, 23

§ 2210.006 .....................................................................3

§ 2210.009 ....................................................................25

§ 2210.015....................................................................25

§ 2210.051..................................................................... 1, 3

§ 2210.052 ................................................................*passim*

§ 2210.052(a)............................................................ 4, 19, 20, 21

§ 2210.052(b)................................................................ 4, 5, 20

§ 2210.052(c)........................................................ 5, 11, 21, 23, 27, 28

§ 2210.052(d) ...........................................................5, 25, 27

§ 2210.053 ...................................................................25

§ 2210.071................................................................... 4, 23

§ 2210.071(a)........................................................... 19, 23

§ 2210.072 ....................................................................4

§ 2210.073 ....................................................................4

§ 2210.074 ...............................................................................................4

§ 2210.0725 .......................................................................................*passim*

§ 2210.0725(b) .............................................................. 4, 6, 11, 19, 20, 23

§ 2210.0741...........................................................................................4

§ 2210.0742 .........................................................................................4

§ 2210.151 ........................................................................................3, 17

§§ 2210.151-.152 ............................................................................. 15

§ 2210.152................................................................................... 17, 24

§ 2210.152(a)(2)(A) ..................................................... 3, 17, 24, 26

§ 2210.551 .........................................................................................9

§ 2210.613 ................................................................. 15, 19, 27, 28

§ 2210.6135 ..................................................................... 15, 19, 27

§ 2301.010............................................................................... 25

## Other Authorities:

35 Tex. Reg. 6611 (2010) ..............................................6, 11, 19, 21, 23, 27

36 Tex. Reg. 786 (2011)..............................................................5, 6, 19

46 Tex. Reg. 162 (2021) ............................................................ 5, 6

# RECORD REFERENCES

"AR" refers to the administrative record of proceedings before the Department of Insurance and in the State Office of Administrative Hearings. "CR" refers to the Clerk's Record.

# STATEMENT OF THE CASE

*Nature of the Case*: This is a suit for judicial review of a final order of the Texas Department of Insurance. That order confirms an assessment of excess-loss payments that appellant ASI Lloyds Insurance Company must pay to the Texas Windstorm Insurance Association (TWIA). CR.28-33. ASI also sought a judgment declaring that the Department's rule directing TWIA to assess its members based on the year in which an assessment is made is invalid. CR.22-24.

*Course of Proceedings*: The trial court heard the Department and TWIA's pleas to the jurisdiction before proceeding to the merits of ASI's suit for judicial review by considering the parties' trial briefs. CR.534

*Trial Court*: 126th Judicial District Court, Travis County
The Honorable Jan Soifer

*Trial Court Disposition*: The trial court denied the pleas to the jurisdiction and affirmed the Department's order "in all respects." CR.535.

# STATEMENT REGARDING ORAL ARGUMENT

The Commissioner submits that oral argument in this case is unnecessary to decide the straightforward issues presented in this appeal. Should the Court disagree, the Commissioner requests the opportunity to participate in oral argument.

# Issues Presented

All insurers writing property insurance policies in Texas may be required to pay periodic assessments to the Texas Windstorm Insurance Association following a significant catastrophic storm. The Department is charged by statute with developing TWIA's plan of operation, which implements TWIA funding, including through assessments. Under this plan, TWIA incrementally resorts to three classes of assessments based on the funding need. Assessments are calculated based on several variables; as relevant here, these variables include a member's Percentage of Participation (POP) in the Texas insurance market based on its premiums collected in the prior calendar year in proportion to all insurers in Texas. Assessments are based on the previous calendar year for which premium data is available, and in some instances, TWIA assesses its members in a calendar year after the year in which the catastrophe causing the losses occurred.

The issues presented are:

1. Whether ASI's claim under the Uniform Declaratory Judgments Act is jurisdictionally barred as a redundant remedy that attempts to duplicate its APA claim.

2. Whether TWIA may calculate an insurer's percentage of participation for making a Class 1 member assessment under Texas Insurance Code section 2210.0725 in accordance with TWIA's plan of operation, which by rule specifies that the percentage of participation "must be computed on a calendar year basis for the year in which the assessment is made" and "not based on the year in which the catastrophic event occurred, except for an assessment made during that year."

# INTRODUCTION

Together, the Department and TWIA—the hail and windstorm insurance carrier of last resort in Texas—share the difficult task of ensuring adequate hail and windstorm coverage in an area of Texas that is prone to devastating hurricanes and tropical storms. *See* Tex. Ins. Code § 2210.001. TWIA is composed of all insurers who write property insurance policies in Texas. *Id.* § 2210.051. By statute, TWIA follows a multi-layered funding structure that requires it to assess members if TWIA's premium and reserve-trust revenues are depleted. *Id.* § 2210.0725. TWIA calculates assessment payments based on a member's POP. This complicated formula compares a member's premium revenues for a given year with all other members' premiums for that calendar year, factoring in certain credits for voluntarily writing policies following storm events. TWIA calculates POP based on the year in which TWIA makes the assessment. 28 Tex. Admin. Code § 5.4162(b) [hereinafter, the Rule].

In the wake of catastrophic losses from Hurricane Harvey in 2017, TWIA made three assessments throughout the years that followed. ASI Lloyds Insurance Company, a TWIA member, concluded that if it had been assessed based on its 2017 POP instead of the 2019 POP that TWIA used in its third assessment, it would have saved $438,300. CR.15; AR.455. ASI, along with other insurers, therefore asserted that the Department's 2011 rule requiring TWIA to assess members' POP based on the year in which the assessment is made, rather than the catastrophe year, should be declared invalid.

Throughout this litigation, ASI has repeated its unfounded assertion that Class 1 Assessments must be based on the catastrophe year, primarily because the Legislature decided to define the term "catastrophe year" to mean the year in which a covered loss occurred. But ASI has never established that the Rule contravenes that or any other statutory provision. Under the plain meaning of the provisions allowing the Commissioner to adopt the Rule and permitting TWIA to assess members based on that Rule, ASI's argument crumbles, as all tribunals to hear this dispute thus far correctly concluded. The Court should affirm.

## Statement of Facts

Insurers writing insurance policies in Texas, by statute, become members in TWIA, which is responsible for ensuring adequate coverage for losses to Texas property owners after natural disasters. CR.35-36; Tex. Ins. Code §§ 2210.001, .006, .051. TWIA ensures an adequate risk pool through its normal premium collection and revenues, but should losses exceed those amounts, it has statutory power to assess its members on an annual basis as needed; it does this through a statutorily prescribed sequence of funding sources. CR.36-37. TWIA calculates assessments using the member's POP, which is "based upon a complex formula that relates to the insurance written less credits received for voluntarily writing insurance in the catastrophe area." CR.37. The year in which POP must be calculated forms the basis for ASI's claims.

## I. Funding of TWIA for Losses Exceeding Its Normal Revenue and Premiums

### A. Insurance Code chapter 2210 and the plan of operation

Chapter 2210 sets out a detailed statutory scheme allowing the Department to adopt rules and TWIA to ensure adequate coverage for catastrophic losses in the Gulf region. The Legislature vested authority in the Commissioner of Insurance to adopt a plan of operation for TWIA to follow in providing windstorm and hail insurance in a catastrophe area, Tex. Ins. Code § 2210.151, and requires the plan of operation to include "a plan for the equitable assessment of the members of [TWIA] to defray losses and expenses," *id.* § 2210.152(a)(2)(A).

TWIA's statutory funding structure layers, which it resorts to for paying losses that exceed the amount of its premiums, other revenue, and reserves, are paid in this sequence:

1. Class 1 public securities, *id.* § 2210.072;

2. Class 1 member assessments up to $500,000,000, *id.* § 2210.0725;

3. Class 2 securities, *id.* § 2210.073;

4. Class 2 member assessments, *id.* § 2210.074;

5. Class 3 securities, *id.* § 2210.0741; and

6. Class 3 member assessments, *id.* § 2210.0742.

CR.36-37. As relevant here, after TWIA exhausts available Class 1 Public Securities pursuant to section 2210.072, it will make a Class 1 Assessment to its members under section 2210.0725. Tex. Ins. Code §§ 2210.071, .0725. In a Class 1 Assessment, "[t]he proportion of the losses allocable to each insurer under this section shall be determined in the manner used to determine each insurer's participation in [TWIA] for the year under Section 2210.052." *Id.* § 2210.0725(b). Under section 2210.052, members

> shall participate in insured losses and operating expenses of [TWIA], in excess of premium and other revenue of [TWIA], in the proportion that the net direct premiums of that member during the preceding calendar year bears to the aggregate net direct premiums by all members of [TWIA], as determined using the information provided under Subsection (b).

*Id.* § 2210.052(a). Subsection (b) mandates the Department review and provide TWIA with "annual statements, other reports, and other statistics" as necessary to

4

determine member participation levels. *Id.* § 2210.052(b). Further, "[e]ach member's participation in [TWIA] shall be determined annually in the manner provided by the plan of operation." *Id.* § 2210.052(c); *see* 28 Tex. Admin. Code §§ 5.4001 *et seq.* (Tex. Dep't of Ins., TWIA plan of operation); *see also* AR.458 (Stipulation 102).

TWIA members may receive offsetting credits based on policies the member voluntarily writes in the "catastrophe area." Tex. Ins. Code §§ 2210.003(3), .052(d); AR.1973 n.19. The Commissioner designated the catastrophe area to include counties in the Gulf region in which storm damage is frequent and adequate voluntary coverage is lacking. AR.1973. When TWIA is required to assess its members in a year for which premium data has not yet become available, it will use the POP for the latest year in which premium data is available, reassess the members when POP is updated, and refund or adjust the payment due from its members accordingly. 28 Tex. Admin. Code § 5.4162(c).

## B.  Adoption of Rule 5.4162

The Commissioner adopted the Rule pursuant to her authority to create the plan of operation and direct the details of the statutory funding scheme described above. In its reasoned justification adopting the Rule, the Department explained that sections 5.4161-.4167 were necessary to address legislative changes in 2009 related to TWIA's Class 2 and Class 3 public-security funding layers. AR.203; 36 Tex. Reg. 786, 786 (2011), *amended in part by* 46 Tex. Reg. 162, 166 (2021) (codified at 28 Tex.

Admin. Code § 5.4162) (Tex. Dep't of Ins., Amount of Assessment).[1] The Department also made clear, however, that the Rule would "become part of [TWIA]'s plan of operation," AR.204; 36 Tex. Reg. at 787. The Department cited, under the register heading "STATUTORY AUTHORITY," section 2210.052, the existing statutory authority at the time, to both propose and adopt the Rule, and—as stated above—section 2210.0725(b) cross-references and incorporates section 2210.052's requirements. AR.1185; 35 Tex. Reg. 6611, 6621 (2010) ("The sections are proposed under the Insurance Code § . . . 2210.052."), *adopted by* 36 Tex. Reg. 786, 786 (2011), *amended in part by* 46 Tex. Reg. at 166 (codified at 28 Tex. Admin. Code § 5.4162(b)) (Tex. Dep't of Ins., Amount of Assessment); AR.204, 36 Tex. Reg. at 787 (citing Tex. Ins. Code § 2210.052).

Rule 5.4162 is titled "Amount of Assessment," and subsection (b), as it read at the time of the assessment, provides:

> [The amount of the assessment] shall be computed on a calendar year basis for the year in which the assessment is made. This determination shall not be based on the year in which the catastrophic event occurred, except for an assessment made during that year. Net direct premiums must be determined as provided under §5.4001 of this subchapter (relating to Plan of Operation).

35 Tex. Reg. at 6622, *adopted by* 36 Tex. Reg. at 786, *amended in part by* 46 Tex. Reg. at 166 (codified at 28 Tex. Admin. Code § 5.4162(b)) (Tex. Dep't of Ins., Amount of Assessment).

---

[1] The Department initially adopted the Rule in 2011 and amended with nonsubstantive, stylistic changes in 2021. AR.1732; 46 Tex. Reg. at 166.

## II. ASI's Assessments from Hurricane Harvey

ASI[2] is required to be a member of TWIA as an insurer operating in Texas, and it was a member of TWIA in 2017, when Hurricane Harvey hit Texas. CR.12; AR.453. TWIA was required to make, and the Commissioner approved, Class 1 Assessments of its members between 2018 and 2020 because the damage resulted in payment of claims that exceeded TWIA's available premiums, reserves, and Class 1 public securities. CR.51; AR.454. ASI received three TWIA assessment letters between 2018 and 2020, and challenges only the third assessment letter.

On January 10, 2020, the Commissioner approved TWIA's request to assess participating member insurers in the additional amount of $90,000,000 for losses arising from Hurricane Harvey. AR.454. TWIA's letter dated February 13, 2020, notified ASI of a third Class 1 Member assessment to pay for additional Hurricane Harvey losses. AR.700-703. ASI's 2019 POP (based on net premium participation in 2018) was 3.223%, which resulted in an assessment of $2,900,700. AR.700-703; *see also* AR.454 (explaining that the increase in POP is attributable to increased homeowner's writings by ASI in Texas). This letter also stated that the third assessment would ultimately be adjusted based on ASI's 2020 POP, which TWIA would finalize at the end of 2020. AR.455, 700-703. ASI paid its third assessment to TWIA in 2020 (based on their 2019 POP), but argues that if TWIA had utilized the 2017 POP, ASI would have only been required to pay $2,462,400, a difference of $438,300. CR.15; AR.455.

---

[2] ASI Lloyds is part of the Progressive Group and TWIA calculated ASI's 2019 POP, but not its 2017 POP, as part of the Progressive Group.

## III. Procedural History

### A. Agency proceedings

ASI and other insurers appealed to the Department, challenging TWIA's Class 1 assessments following Hurricane Harvey. CR.28. ASI did not contest the amount of Hurricane Harvey losses or TWIA's POP calculations themselves but contended that TWIA should have used a different year's POP in its third assessment. AR.454, 459. TWIA moved for summary disposition of ASI's administrative claims, arguing that the Rule and assessments were valid exercises of TWIA's and the Department's respective authorities. CR.34. The State Office of Administrative Hearings (SOAH) issued a Proposal for Decision upholding TWIA's calculations based on the year of the assessment, rather than the year of the catastrophe. CR.46-47. In its Proposal for Decision, SOAH found that the Rule was a valid exercise of the Department's statutory authority under Insurance Code chapter 2210 and that the Rule is a valid regulation under TWIA's Plan of Operation. CR.46-47.

With some minor corrections, the Commissioner adopted the Proposal for Decision in a Final Order. CR.28-33. The Commissioner found that the Rule is "a part of [TWIA]'s Plan of Operation" under the then-current version of 28 Tex. Admin Code § 5.4161(c), which is "now found at § 5.4160(j) (eff. Jan. 6, 2021)." CR.32. The Commissioner also found that the Rule "is reasonable and does not conflict with Code §§ 2210.052 or .0725." CR.32.

### B. Trial court

ASI sued TWIA and the Commissioner, seeking judicial review of the third TWIA assessment following Hurricane Harvey and declaratory relief invalidating

8

the Rule. CR.3-27. TWIA and the Commissioner both asserted jurisdictional challenges, CR.110-161, and briefed the merits issues for judicial review, CR.355-474. The trial court denied the pleas to the jurisdiction and found it had jurisdiction under the Administrative Procedure Act (APA) and Texas Insurance Code section 2210.551. CR.534-535. The trial court entered final judgment affirming the Commissioner's final order and denying ASI's petition. CR.535. ASI timely filed this appeal. CR.538-540.

## Summary of the Argument

The Texas Insurance Code does not require TWIA to fix its Class 1 Member Assessments in the catastrophe year. The trial court's dismissal of ASI's rule challenge should be affirmed because (**I**) the trial court has no jurisdiction over ASI's redundant UDJA claim; (**II**) the Rule is a valid exercise of the Commissioner's broad authority to establish and implement TWIA's plan of operation and does not conflict with any statutory provision; (**III**) inconsequential repeal or amendment of portions of TWIA's funding structure have no bearing on whether the Commissioner may set POP as of the year the assessment is made; and (**IV**) none of ASI's other arguments compel reversing the trial court's judgment.

**I.** ASI cannot bring parallel APA and UDJA claims that both seek to declare the Rule invalid. The Commissioner was not required to file a notice of appeal to preserve this issue, as the trial court lacks subject-matter jurisdiction to grant redundant remedies and questions of subject-matter jurisdiction may be raised for the first time on appeal—especially those issues that implicate the State's sovereign immunity. In any event, the Commissioner raised this issue below.

**II.** ASI's challenge to the Rule's validity fails because the Legislature authorized the Commissioner to set POP during the year the assessment is made when it delegated power to the Department to establish and implement TWIA's plan of operation. Section 2210.0725, the statute that requires TWIA to issue Class 1 Assessments to members when its premium and trust-reserve funds are exhausted, does not say that POP must be computed based on the year in which the catastrophe occurs, but it does incorporate the statute that requires members' participation in TWIA to be

"determined annually in the manner provided by the plan of operation." Tex. Ins. Code §§ 2210.052(c), .0725(b).

As both the Department and SOAH correctly concluded in agency proceedings below, CR.32, 46-47, the Rule is part of the plan of operation, which ASI has not challenged as invalid. The plan of operation thus requires that POP "be computed on a calendar year basis for the year in which the assessment is made. This determination shall not be based on the year in which the catastrophic event occurred, except for an assessment made during that year." AR.1186; 35 Tex. Reg. at 6622.

ASI's arguments otherwise fail. It contends that the Commissioner relied only upon certain provisions related to Class 2 securities as a source of TWIA's funding in proposing the Rule, but that presents a fundamentally incorrect portrait of what the Department relied on in proposing and adopting the Rule and how TWIA's funding layers work. Further, the Legislature's choice to identify a "catastrophe year" as the year in which a covered loss occurs imposed no restriction on the Commissioner adopting the Rule. Thus, the Rule does not conflict with any statutory requirement in place at the time ASI received its third Hurricane Harvey assessment. ASI attempts to divert the Court's attention with lengthy legislative and rulemaking histories that are not germane to deciding whether the Rule is valid, but those red herrings can't breathe new life into this rule challenge. Moreover, the Rule works in tandem with statutory provisions requiring the incentivization of policy writings after disaster strikes. The Rule therefore furthers the statutory objectives of ensuring adequate

policy coverage in the catastrophe area, whereas ASI's proposed interpretation fixing POP in the catastrophe year undermines these statutory incentivization measures.

**III.** The Commissioner's authority to promulgate the Rule is not based on isolated provisions in the Insurance Code. The Department's observation in the adoption order that the Rule would have an impact on how Class 2 security payments would be carried out is not a statement that in adopting the Rule, the Commissioner was relying on those statutory funding layers for authority to promulgate the Rule in the first place. This argument constitutes another red herring that does not render the Rule invalid.

**IV.** Because ASI brings a suit for judicial review of the third Hurricane Harvey assessment, it necessarily must be reviewed under the substantial evidence rule if its rule validity challenge fails. ASI asserts that no disputes of fact require a deferential substantial-evidence standard of review, but in so doing it asks the Court to insert language into the statute thwarting the discretion the Legislature provided the Commissioner to establish the plan of operation.

As ASI does not establish sufficient grounds for invalidating the Rule, the Court should affirm the trial court's final judgment upholding the Rule and affirming the Department's order confirming the third Hurricane Harvey assessment.

# ARGUMENT

## I. The Trial Court Lacks Subject-Matter Jurisdiction Over ASI's Claim for Redundant Remedies Under the UDJA.

ASI invokes (at 19) the UDJA as grounds for providing jurisdiction in the trial court. Tex. Civ. Prac. & Rem. Code §§ 37.003-.004. But ASI's claims under these statutes fail for lack of subject-matter jurisdiction because ASI has sought redundant remedies by bringing the same claims challenging the Rule's validity under the APA. "[W]here a claimant has invoked a statutory means of attacking an agency order, a trial court lacks jurisdiction over an additional claim under the UDJA that would merely determine the same issues and provide what is substantively the same relief that would be provided by the other statutory remedy." *Tex. Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 746 (Tex. App.—Austin 2014, pet. dism'd).

The APA waives sovereign immunity for challenges regarding the "validity" or "applicability of a rule" "if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038(a); *see Tex. Logos, L.P. v. TxDOT*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.) (holding that "section 2001.038 is a grant of original jurisdiction and, moreover, waives sovereign immunity"). The UDJA also "expressly allows persons to challenge ordinances or statutes." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 859-60 (Tex. 2002). However,

> even if a claimant asserts an otherwise-valid UDJA claim challenging whether an agency is acting within its statutory authority, the claim is

13

deemed to be barred jurisdictionally as 'redundant' of a pending APA section 2001.038 claim to the extent the official actions from which relief is sought consist of the agency's promulgation or application of a rule.

*Balquinta*, 429 S.W.3d at 747*; see also TxDOT v. Sunset Transp., Inc.*, 357 S.W.3d 691, 700, 705 (Tex. App.—Austin 2011, no pet.); *Tex. DPS v. Salazar*, 304 S.W.3d 896, 906 n.7 (Tex. App.—Austin 2009, no pet.).

Here, ASI seeks a declaratory judgment pursuant to section 2001.038 to determine the Rule's validity. ASI.Br.19. But it also asserts a UDJA claim "concerning the construction or validity of the statute." *Id.* ASI fails to show how any of its requests under the UDJA cannot also be resolved under the APA. Although ASI has not identified precisely how the Rule interferes with or impairs a legal right or privilege, ASI has nonetheless proceeded to challenge the rule pursuant to section 2001.038(a) and therefore, cannot also challenge the rule under the UDJA, as the requests for relief are the same under each statute. *See Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 79 (Tex. 2015).

ASI asserts (at 19) that the Department makes no appeal from the Court's denial of its plea to the jurisdiction. But the question whether the Commissioner retains "[s]overeign immunity from suit 'implicates a court's subject-matter jurisdiction,'" *Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018) (quoting *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 755 (Tex. 2017)) and, as such, the State cannot waive that issue on appeal, *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95-96 (Tex. 2012). In any event, the Department expressly raised this argument concerning the

trial court's subject-matter jurisdiction below. CR.448-451. This Court should accordingly dismiss ASI's redundant UDJA claims for lack of subject-matter jurisdiction.

## II. The Rule Is Valid.

The Commissioner and the trial court properly denied ASI's challenge to the validity of the Rule under the APA. Tex. Gov't Code § 2001.038. The central thrust of ASI's argument proceeds from the false premise that the Commissioner's authority to adopt the Rule arises solely from sections 2210.613 and 2210.6135 of the Texas Insurance Code. ASI.Br.22. That argument fails because those provisions do not provide the enabling authority for the Commissioner to promulgate the Rule, for reasons addressed below, and because a plain reading of the Texas Insurance Code demonstrates that the Commissioner acted in accordance with her statutory authority, as every tribunal correctly found below.

### A. The Commissioner has the authority to promulgate rules that reasonably interpret or further the goals of the Insurance Code.

The Legislature vested the Commissioner with broad authority to determine through her rulemaking authority how TWIA should assess its members. *See* Tex. Ins. Code §§ 2210.151-.152; *cf. Tex. Windstorm Ins. Ass'n v. Poole*, 255 S.W.3d 775, 777 (Tex. App.—Amarillo 2008, pet. denied) ("[T]he powers vested are rather pervasive and encompass not only all those 'incidental and appropriate' to the management of the business but also those 'reasonably necessary' to the accomplishment of [TWIA]'s purpose, that purpose being the provision of 'adequate windstorm, hail, and fire insurance' to particular sectors of our state." (quoting Tex. Ins. Code

15

§ 2210.001 (2007))). The question of a rule's validity is "a purely legal one" to be decided "based on the relevant Texas statutes." *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 569 (Tex. 2021). As the party with the burden to show the Rule's invalidity, ASI must show that the Rule "contravenes specific statutory authority," is contrary to the specific statute's general objectives, or otherwise creates "burdens, conditions, or restrictions" that are inconsistent with the relevant statutory authority. *Id.* Courts do not "draw[] 'meaning . . . from isolated words or phrases'" in the statute in conducting this analysis. *Id.* (second alteration in original) (quoting *Univ. of Tex. at Arlington v. Williams*, 459 S.W.3d 48, 52 (Tex. 2015)).

The Texas Supreme Court has held that statutory objectives must be identified from the plain text of the relevant statute "that grant[s] or limit[s] the agency's authority." *See Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017) (quoting *Pruett v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447, 452 (Tex. 2008)). "Whether the rules are 'in harmony' with the general objectives of the legislation involved is a question of law determined through statutory construction." *Lambright v. Tex. Parks & Wildlife Dep't*, 157 S.W.3d 499, 510 (Tex. App.—Austin 2005, no pet.) (quoting *Al Boenker Ins. Agency v. Tex. Fair Plan Ass'n*, No. 03-01-00050-CV, 2004 WL 1686598, at *4 (Tex. App.— Austin July 29, 2004, pet. denied) (mem. op.)). Courts give "serious consideration" to agencies' construction of statutes they are charged with enforcing if the construction is reasonable and does not contradict the statute's requirements. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). Further, "[i]f the agency's interpretation is consistent with the language and the purposes of the statute, the court

will accept it, even if other reasonable interpretations exist." *Westcott Commc'ns., Inc. v. Strayhorn*, 104 S.W.3d 141, 147 (Tex. App.—Austin 2003, pet. denied); *see also Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*, 997 S.W.2d 298, 305 (Tex. App.—Austin 1999, pet. denied). Accordingly, ASI must show that *no* reasonable basis exists for the Commissioner's interpretation. *N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020).

It cannot do that. Challenges to a rule's validity encompass "whether the agency had statutory authority to promulgate the rule." *City of Alvin v. Pub. Util. Comm'n of Tex.*, 143 S.W.3d 872, 878 (Tex. App.—Austin 2004, no pet.). The Legislature vested authority in the Commissioner of Insurance to adopt a plan of operation for TWIA to follow in providing windstorm and hail insurance in a catastrophe area, Tex. Ins. Code § 2210.151, and requires the plan of operation to include "a plan for the equitable assessment of the members of [TWIA] to defray losses and expenses," *id.* § 2210.152(a)(2)(A); *see also id.* § 36.001. ASI's challenge to the Rule is effectively a challenge to the plan of operation itself, and therefore fails because the Rule does not run counter to sections 2210.151 and 2210.152, which confer the broader statutory authority allowing the Commissioner to adopt the plan of operation and ensure "equitable assessment of the members" through her rulemaking authority. Nothing about the Commissioner's choice of setting the POP calculation in the year the assessment is made runs counter to these objectives.

## B. The Rule does not contravene any statutory language.

ASI does not cite the correct enabling statutes when discussing the validity of the Rule, and analysis of the correct statutes demonstrates that the Department

acted well within its authority to promulgate the Rule requiring POP to be based on the assessment year. ASI has the burden to show the Rule is invalid because it contravenes specific statutory language. *See Cheddar's Casual Café, Inc. v. Hegar*, 644 S.W.3d 771, 779 (Tex. App.—Austin 2022, no pet.).

A state administrative agency, in carrying out the powers conferred upon it by the Legislature, may adopt "a rule that makes *explicit* an implicit distinction contained within the relevant statutory provision." *McMorries v. Tex. Med. Bd.*, No. 03-21-00141-CV, 2023 WL 2025713, at *4 (Tex. App.—Austin Feb. 16, 2023, pet. denied) (mem. op.) (emphasis added). Put another way:

> Lack of express authority for a particular act of an agency does not mean the agency has no authority for that act. An agency may have implied authority to take an action or promulgate a rule even though such authority might not be expressly enumerated in its enabling statute. Indeed, under a general grant of authority, an agency has all the implied authority *reasonably* necessary to accomplish a delegated purpose.

*Tex. Dep't of Human Servs. v. Christian Care Ctrs., Inc.*, 826 S.W.2d 715, 719 (Tex. App.—Austin 1992, writ denied).

ASI cannot meet its burden to show a conflict between the Rule and the relevant statutes because (1) the Legislature gave TDI express and broad authority to adopt rules in the plan of operation for how to calculate an assessment to cover excess losses, *supra* 14-17; (2) by rule, the Department determined the assessments will be calculated using the *calendar year of the assessment*, not the catastrophe year; and (3) the authorities ASI relies on for using the catastrophe year for assessments either do not address the issue or are consistent with the Department's interpretation. The

Rule's year-of-assessment requirement presents no inconsistency with sections 2210.052(a), 2210.003(3-b), or 2210.071(a).

**1.** The Department correctly referenced the then-extant statutory authority, section 2210.052, to both propose and adopt Rule 5.4162(b). *See* AR.1185; 35 Tex. Reg. at 6621 (referencing section 2210.052 under the register heading "STATU-TORY AUTHORITY"); AR.204, 36 Tex. Reg. at 787 (first citing Tex. Ins. Code § 2210.052; and then citing 28 Tex. Admin. Code § 5.4162(b)). Section 2210.0725(b), which is the statute requiring TWIA to make Class 1 Assessments if the preceding funding layers are exhausted, expressly cross-references and incorporates section 2210.052's requirements. *See* Tex. Ins. Code § 2210.0725(b) ("The proportion of the losses allocable to each insurer under this section shall be determined in the manner used to determine each insurer's participation in [TWIA] for the year under Section 2210.052.").

ASI instead cites sections 2210.613 and 2210.6135[3] and commentary from the Texas Register as the provisions the Department allegedly used to justify promulgating the Rule. ASI.Br.1, 6, 17, 22-23 (citing AR.1177). ASI also argues (at 26) that section 2210.0725 could not have been used to justify the Rule because that statute was not in existence in 2011 when the Rule was initially adopted. That argument should be cast aside because it ignores that section 2210.0725 incorporated section 2210.052, which was expressly mentioned in the Rule's proposal and adoption as

---

[3] These provisions do not constitute the enabling provisions for the plan of operation, as discussed *supra* at 14-17 and further discussed below.

explained above. These arguments also fail because the Department had the authority to adopt the Rule in 2011, and the changes in the law in 2015 adding section 2210.0725 have only confirmed the Legislature's support of the agency's correct interpretation when read together. Moreover, ASI fails to cite any legal authority requiring a rule be declared invalid when a statute errantly cited in the depths of the agency's rule explanation is repealed or amended.

Nothing in either section 2210.052 or 2210.0725 requires TWIA to fix its POP calculation as of the year of the catastrophe. On its face, section 2210.052(a) did not specify the POP year TWIA should use in an assessment; instead, the statute vested authority in the Department to specify the POP. That provision reads:

> Each member of [TWIA] shall participate in insured losses and operating expenses of [TWIA], in excess of premium and other revenue of [TWIA], in the proportion that the net direct premiums of that member during the preceding *calendar year* bears to the aggregate net direct premiums by all members of [TWIA], as determined using the information provided under Subsection (b).[4]

Tex. Ins. Code § 2210.052(a) (emphasis added). Critically, section 2210.0725, which is the assessment statute in effect when the relevant assessment was made, further supports the Rule and provides that for Class 1 Member assessments, "[t]he proportion of the losses allocable to each insurer . . . shall be determined in the manner used to determine each insurer's participation in [TWIA] for the year *under Section 2210.052*." *Id.* § 2210.0725(b) (emphasis added).

---

[4] Subsection (b) of this statute is the provision requiring the Department to review and forward to TWIA the relevant annual statements and statistics reflecting member participation. *Id.* § 2210.052(b).

And, as section 2210.052(c) mandates, "[e]ach member's participation in [TWIA] shall be determined annually in the manner *provided by the plan of operation*." *Id.* § 2210.052(c) (emphasis added). As SOAH and the Commissioner correctly found, the Rule is found in the plan of operation, CR.32, 45, and ASI does not argue that the Rule is not part of the plan of operation. The Rule provides:

> Th[e] determination [of POP] shall be computed on a calendar year basis for the year in which the assessment is made. This determination shall not be based on the year in which the catastrophic event occurred, except for an assessment made during that year. Net direct premiums must be determined as provided under §5.4001 of this subchapter (relating to Plan of Operation).

AR.1186; 35 Tex. Reg. at 6622.[5] When read together with all the relevant provisions of the Insurance Code, the Rule poses no conflict.

ASI cannot show that the Rule contravenes section 2210.052(a) because section 2210.052(a) does not, on its face, say that the POP is determined by the catastrophe year giving rise to the assessment or the year of the assessment; instead, it directs the member to "the preceding calendar year" and subsection (c) invokes the plan of operation. Indeed, if the Legislature intended for the catastrophe year to be used for the calculation of assessments, it could have stated so *in this section*. When the Legislature has had the opportunity to contradict an agency rule and has not done so, the

---

[5] As noted *supra* n.1, the text of the Rule was changed slightly for stylistic and readability reasons in 2021. Thus, the text in effect at the time of the assessment is quoted here and citation is to the relevant version in the administrative record as proposed and adopted in 2011.

Legislature may be presumed to have accepted the agency's interpretation. *See Westcott*, 104 S.W.3d at 146.

The Rule works *with* section 2210.052 to determine a plan for the equitable assessment of insurers following a catastrophe event by assessing members in the year an assessment is made, which utilizes the net direct premium information from the year preceding the assessment. Thus, the Rule and section 2210.052 do not conflict.

**2.** Contrary to ASI's argument (at 27-30), the Insurance Code's definition of "catastrophe year" has no impact on the Department's delegated authority to develop the plan of operation, under which assessments are made. Section 2210.003(3-b) states: "'Catastrophe year' means a calendar year in which an occurrence or a series of occurrences results in insured loses, regardless of when the insured losses are ultimately paid." Tex. Ins. Code § 2210.003(3-b). This definition explains that a "catastrophe year" is the year in which the losses from a catastrophe occur, but it does not direct how TWIA must determine each member's share of an assessment. Further, a catastrophe year is established "regardless of when the insured losses are ultimately paid." *Id.* The statutory text thus contemplates that assessments could occur in years other than the catastrophe year.

ASI's emphasis on the Code's description of the catastrophe year, contrary to the Texas Supreme Court's warnings in *Williams* not to "draw[] 'meaning . . . from isolated words or phrases," places unfounded emphasis on a provision in the Code that does not direct when or how TWIA may make Class 1 Assessments of its members. *See* 459 S.W.3d at 52. No conflict exists between this definition and a Rule that requires *assessments* to be based on a POP for the year in which the assessment is

22

made. *Compare* Tex. Ins. Code § 2210.003(3-b), *with* AR.1186, *and* 35 Tex. Reg. at 6622. Accordingly, a statutory term describing when a loss may be *incurred* has no controlling relationship whatsoever on when or how TWIA may assess its members to pay those losses.

**3.** ASI's invocation (at 27) of section 2210.071 directly undercuts its argument that the Rule conflicts with the Code. Section 2210.071(a) states: "If, in a catastrophe year, an occurrence or series of occurrences in a catastrophe area results in insured losses and operating expenses of [TWIA] in excess of premium and other revenue of [TWIA], the excess losses and operating expenses shall be paid as provided by this subchapter." Tex. Ins. Code § 2210.071(a). ASI attempts to misdirect by noting (at 27) that "this subchapter" does not include section 2210.052—but it does include section 2210.0725, under which ASI received its third assessment, and which expressly incorporates section 2210.052. *See* Tex. Ins. Code §§ 2210.052(c), .0725(b) ("The proportion of the losses allocable to each insurer under this section shall be determined in the manner used to determine each insurer's participation in [TWIA] for the year under Section 2210.052."). Further, section 2210.071 utilizes the "catastrophe year" to describe the calendar year in which losses may be aggregated while the Rule utilizes the assessment year to determine a member insurer's portion of liability for those excess losses. These are two different calculations meant to satisfy two different statutory purposes.

It is unclear what help, if any, the cases that ASI cites on this point provide. ASI.Br.28-29 (citing *United States v. Kahn*, 5 F.4th 167, 175 (2d Cir. 2021); *State v. Jackson*, 376 S.W.2d 341, 345 (Tex. 1964)). Certainly, the Department would not

23

disagree with *Kahn* to the extent it holds "subsequently enacted or amended statutes supersede prior *inconsistent* regulations." 5 F.4th at 175 (cleaned up) (emphasis added) (quoting *Norman v. United States*, 942 F.3d 1111, 1118 (Fed. Cir. 2019)). Nor would the Department quibble with the generally accepted principle that a regulatory agency cannot prohibit certain private conduct, even when pursuant to valid rule-making authority, if the Legislature subsequently saw fit to permit that conduct. *Jackson*, 376 S.W.2d at 343-46. But, as it did below, ASI repeatedly alleges a contradiction between the Rule and chapter 2210 generally without explaining how the rule and statutes contradict or how the Commissioner's interpretation is unreasonable. Because the controlling statutes unambiguously answer the question as to when TWIA may assess its members, ASI's argument fails.

## C. The Rule furthers the relevant statutory objectives and does not burden ASI beyond the Commissioner's permissible authority.

**1.** The Rule furthers the general objectives of chapter 2210. TWIA's primary purpose is the "provision of an adequate market for windstorm and hail insurance in the seacoast territory." Tex. Ins. Code § 2210.001. Section 2210.152 requires the plan of operation to include "a plan for the equitable assessment of the members of [TWIA] to defray losses and expenses." *Id.* § 2210.152(a)(2)(A). The Rule is an express part of this plan, 28 Tex. Admin. Code § 5.4160(j) (providing that the Rule controls over any conflicting provision in the Administrative Code), and identifies which year TWIA uses to determine an insurer's POP liability.

Tying the POP to the assessment year supports several provisions of chapter 2210 that aim to encourage authorized insurers to write windstorm and hail insurance on the coast. For example, section 2210.009 requires the Department to develop incentive programs to encourage private market insurers to write windstorm and hail insurance on the coast of Texas. Tex. Ins. Code § 2210.009. Section 2210.015 requires the Department to study market incentives to promote participation in the voluntary windstorm market on the coast; section 2210.053 allows the Department to develop a program to incentivize insurers to voluntarily write windstorm and hail insurance to cover property located in Texas catastrophe areas; and section 2301.010 provides for a shortened contractual limitations period and claim-filing deadline for insurers that issue windstorm and hail insurance on the Texas coast. *Id.* §§ 2210.015, .053, 2301.010.

Importantly, section 2210.052(d) states that an insurer "is entitled to receive credit for similar insurance voluntarily written in areas designated by the commissioner. The member's participation in the insured losses and operating expenses of [TWIA] in excess of premium and other revenue of [TWIA] shall be reduced in accordance with the plan of operation." *Id.* § 2210.052(d).

Thus, when assessments are based on the year of the assessment, an insurer can potentially reduce its share of an assessment by increasing its writing of policies in the area, even after a catastrophic event. If assessments were based on the year of the catastrophe, the share of the insurer's assessment for a catastrophic event would be fixed based on that year's POP, and there would be no incentive to increase writings

25

in the catastrophe area in subsequent years to lower its POP. Therefore, making assessments based on the year of the assessment is consistent with the goals of chapter 2210 and, conversely, making assessments based on the year of the catastrophic event would run counter to the objectives of chapter 2210. ASI fails to show how the Rule runs counter to these objectives.

**2.** ASI's position that POP should be fixed in the catastrophe year, however, does run counter to general objectives of chapter 2210. ASI contends that, for the 2020 assessment, by utilizing an assessment based on the catastrophe year, ASI would be entitled to a reimbursement. CR.15. However, for any given assessment, some insurers will pay more when the assessment is based on the catastrophe year rather than the assessment year while others will pay less. It is impossible to know in advance how each insurer will be affected, given the number of possible variables including whether new insurers join the market, an insurer increases or decreases their writing, or, as with ASI, an insurer joins with another insurer. The Rule does not categorically impose any additional burden, condition, or restriction in excess of or inconsistent with the relevant statutory provisions but adds a plan for assessment as required by section 2210.152(a)(2)(A). Indeed, if a different interpretation lowers ASI's POP, some other members' POP would necessarily be higher to make up for the shortfall in funding caused by such an interpretation.

And if the Rule required fixing the member's POP in the year of the catastrophe, the Department would be frustrated in carrying out the incentive provisions of chapter 2210 as explained above—a member could not voluntarily reduce its POP in the years following a catastrophe year if the member's POP must always be based on the

catastrophe year. *See, e.g.*, Tex. Ins. Code § 2210.052(d). ASI's interpretation, therefore, would impose "additional burdens, conditions, or restrictions" on the members by depriving them of a credit they would have otherwise been able to use. *See Tex. Bd. of Chiropractic Exam'rs*, 616 S.W.3d at 569.

## III. No Statute Under which the Department Has the Authority to Promulgate the Rule Has Been Repealed.

ASI repeatedly cites a paragraph of the Texas Register for the proposition that the Department claims the Rule is justified under Texas Insurance Code sections 2210.613 and 2210.6135. ASI.Br.1, 6, 17, 22-23 (citing AR.1177). The cited passages explain that the Rule's requirement that TWIA assess members based on a POP computed as of the year the assessment is made affect computations for the TWIA funding layers backed by public securities under those statutes (which are not at issue in this appeal). AR.1177; 35 Tex. Reg. at 6613. ASI further argues (at 22-23) that section 2210.6135's repeal in 2015 invalidates the Rule. But these arguments are misguided.

It's simply not true that the Department's authority for promulgating the plan of operation is based on the statutes governing the Class 2 public securities. *Supra* 17-21. As already explained, the Rule is valid because section 2210.052 allows the Department to determine member's participation annually as "provided by the plan of operation." Tex. Ins. Code § 2210.052(c). Thus, the statute from which the Legislature delegated authority for TWIA assessments to the Department has *not* been repealed. Legislative changes to the funding requirements for public securities have no bearing on the legislative delegation to the Commissioner to create the plan of

27

operation (a decision the Legislature has already made), the Commissioner's adoption of a Rule computing POP based on the year the assessment is made, or TWIA's carrying out those assessments in accordance with the plan of operation. Moreover, section 2210.613 has not been repealed and continues to provide direction regarding the process for Class 2 assessments.

## IV. The Department's Order Should Otherwise Be Affirmed.

ASI accuses the Department of invoking "the rule of agency deference" as a "last . . . resort" to save the Rule from being declared invalid. ASI.Br.31. But the Department does not need any deference as a last—or first—resort here because ASI does not present this Court with any basis to find the Rule contrary to any statutory language that authorizes it, as already explained. Rather, in the absence of meritorious arguments for invalidating the Rule, the Department's order must be upheld under substantial-evidence review.

ASI correctly observes that "a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." ASI.Br.34 (quoting Tex. Gov't Code § 2001.174). By providing that "[e]ach member's participation in [TWIA] shall be determined annually in the manner provided by the plan of operation," the Legislature wrote discretion into the statute for the Commissioner to determine the appropriate computational method for POP. *See* Tex. Ins. Code § 2210.052(c). As explained above, not only has ASI failed to show how setting POP in the year of the assessment contravenes this authority, ASI's preferred interpretation would read an affirmative command into chapter 2210 that TWIA *must* set POP in the catastrophe year—a choice legislators

28

did not make. Under the Texas Supreme Court authority ASI cites (at 34) for this proposition, that result would "rewrit[e] text that lawmakers chose." *Davis v. Morath*, 624 S.W.3d 215, 222 (Tex. 2021) (quoting *Pruski v. Garcia*, 594 S.W.3d 322, 325 (Tex. 2020)). The Court should refuse ASI's request to do so here.

## Prayer

The Court should affirm the trial court's judgment.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

AARON L. NIELSON
Solicitor General

BRENT WEBSTER
First Assistant Attorney General

/s/ Cory A. Scanlon
CORY A. SCANLON
Assistant Solicitor General
State Bar No. 24104599
Cory.Scanlon@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-2923
Fax: (512) 474-2697

*Counsel for The Honorable Cassie Brown, Commissioner of Texas Department of Insurance*

## Certificate of Compliance

Microsoft Word reports that this brief contains 7,206 words, excluding exempted text.

/s/ Cory A. Scanlon
CORY A. SCANLON

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Villarreal on behalf of Cory Scanlon
Bar No. 24104599
nancy.villarreal@oag.texas.gov
Envelope ID: 96071669
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 2025 0110 Appellee TDI Br_final
Status as of 1/10/2025 10:17 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Wade Crosnoe | 783903 | wcrosnoe@thompsoncoe.com | 1/10/2025 10:15:04 AM | SENT |
| Adrienne Barclay | 24065955 | aredinger@perkinslawtx.com | 1/10/2025 10:15:04 AM | SENT |
| Rosalind Hunt | 24067108 | Rosalind.Hunt@oag.texas.gov | 1/10/2025 10:15:04 AM | SENT |
| Cory Scanlon | 24104599 | cory.scanlon@oag.texas.gov | 1/10/2025 10:15:04 AM | SENT |
| Michael Wilson | | mwilson@perkinslawtx.com | 1/10/2025 10:15:04 AM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 1/10/2025 10:15:04 AM | SENT |
| Jay A.Thompson | | jthompson@mwlaw.com | 1/10/2025 10:15:04 AM | SENT |
| Terri M.Abernathy | | terri.abernathy@oag.texas.gov | 1/10/2025 10:15:04 AM | SENT |
| Shawn Pettyjohn | | spettyjohn@perkinslawtx.com | 1/10/2025 10:15:04 AM | SENT |